Filed 12/17/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| LES JANKEY et al., | ) | |
| | ) | |
| Plaintiffs and Appellants, | ) | S180890 |
| | ) | |
| v. | ) | Ct.App. 1/4 A123006 |
| | ) | |
| SONG KOO LEE etc., | ) | San Francisco City & County |
| | ) | Super. Ct. No. CGC07-463040 |
| Defendant and Respondent. | ) | |
| _____ | ) | |

Sued under state and federal law for disability access discrimination, defendant Song Koo Lee prevailed and sought attorney fees. The trial court concluded fees for a prevailing defendant under Civil Code section 55 were mandatory and awarded $118,458, and the Court of Appeal affirmed.[1] We consider two principal challenges to the award: whether the trial court erred in determining that section 55 fees are mandatory, and whether an award of mandatory fees is preempted by the federal Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA). We conclude the plain language of section 55 makes an award of fees to any prevailing party mandatory, and the ADA does not preempt this part of the state's attorney fee scheme for disability access suits. Accordingly, we affirm the judgment of the Court of Appeal.

---

[1] All further unlabeled statutory references are to the Civil Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Lee owns and operates the K&D Market, a small grocery store in San Francisco's Mission District. He does not own the building but has operated the market since 1985.

Plaintiff Les Jankey, a wheelchair user, sued Lee for denying him and other similarly situated disabled persons access to the full and equal enjoyment of the goods and services offered by K&D Market.[2] Jankey contended a four-inch step located at the entry of the market was an architectural barrier that prevented him and other wheelchair-bound individuals from wheeling into the store. Jankey asserted violations of the federal ADA, the Unruh Civil Rights Act (§ 51 et seq.), the Disabled Persons Act (§ 54 et seq.),[3] and Health and Safety Code section 19955 et seq. Among other relief, Jankey sought an injunction under state and federal law compelling Lee to make K&D Market readily accessible to individuals with disabilities. (See § 55; 42 U.S.C. § 12188(a)(2).)

The trial court granted Lee summary judgment. That K&D Market had a threshold step was undisputed, but Lee conclusively established as an affirmative defense that removal of the barrier was not readily achievable and he thus was entitled to judgment on all four disability access claims. (See *Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 669 & fn. 6; *Colorado Cross Disability v. Hermanson Family* (10th Cir. 2001) 264 F.3d 999, 1002-1003; 42 U.S.C. § 12182(b)(2)(A)(iv).)

---

[2] Jankey was originally joined by a second plaintiff, a nonprofit disability rights organization, but the trial court concluded it lacked standing and the organization plays no role in this appeal.

[3] "Part 2.5 of division 1 of the Civil Code, currently consisting of sections 54 to 55.3, is commonly referred to as the 'Disabled Persons Act,' although it has no official title." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 674, fn. 8.)

Lee moved for an award of attorney fees under section 55, which provides for prevailing party fees in actions to enjoin disability access violations. Opposing the motion, Jankey argued that section 55 was preempted by the ADA. (See *Hubbard v. SoBreck, LLC* (9th Cir. 2009) 554 F.3d 742, 745.) In the alternative, Jankey contended an award could be made only upon a finding that the complaint was "frivolous, unreasonable, or groundless."[4] (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 422.) Without directly addressing preemption, the trial court concluded Lee was entitled to a mandatory fee award under *Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786.[5] The court awarded Lee $118,458 in fees, most of the approximately $130,000 originally sought.

While not contesting the summary judgment, Jankey appealed the trial court's award of attorney fees. The Court of Appeal affirmed. It "respectfully disagree[d] with the *Hubbard* [*v. SoBreck, LLC*, *supra*, 554 F.3d 742] court's preemption analysis," concluding a mandatory fee award was both required by state law and permitted by federal law. It upheld the trial court's fee award in its entirety.

We granted review to address the conflict between the Ninth Circuit's opinion in *Hubbard v. SoBreck, LLC*, *supra*, 554 F.3d 742, finding preemption, and the Court of Appeal's decision, finding none.

---

**4** Consistent with common practice, we use "frivolous" as shorthand for this formulation.

**5** Accordingly, the trial court made no finding as to whether Jankey's claims could be characterized as frivolous.

3

## I. *Federal and State Disability Access Remedies*

Congress and the Legislature have afforded persons with disabilities a range of legal tools for remedying denials of access. The ADA and numerous state statutes each prohibit access discrimination on the basis of disability, but they vary in the remedies they provide.

The ADA prohibits discrimination on the basis of disability in the enjoyment of public accommodations, including with respect to access. (42 U.S.C. § 12182.) Businesses must " 'remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable.' " (*Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 669, quoting 42 U.S.C. § 12182(b)(2)(A)(iv).) Liability does not depend on proof of intentional discrimination, but a private litigant cannot obtain damages for the denial of access, only injunctive relief. (*Munson*, at pp. 669-670; 42 U.S.C. § 12188(a).)

In 1992, shortly after passage of the ADA, the Legislature amended the state's disability protections " 'to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA].' " (*Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 669, quoting Stats. 1992, ch. 913, § 1, p. 4282.) Two overlapping laws, the Unruh Civil Rights Act (§ 51) and the Disabled Persons Act (§§ 54-55.3), are the principal sources of state disability access protection.

The Unruh Civil Rights Act broadly outlaws arbitrary discrimination in public accommodations and includes disability as one among many prohibited bases. (§ 51, subd. (b).) As part of the 1992 reformation of state disability law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference

the ADA, making violations of the ADA per se violations of the Unruh Civil Rights Act. (§ 51, subd. (f); *Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at pp. 668-669.) This amendment was intended to extend to disabled individuals aggrieved by an ADA violation the full panoply of Unruh Civil Rights Act remedies. (*Munson*, at p. 673.) These include injunctive relief, actual damages (and in some cases as much as treble damages), and a minimum statutory award of $4,000 per violation. (§ 52, subds. (a), (c)(3); *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058.)

The Disabled Persons Act substantially overlaps with and complements the Unruh Civil Rights Act. (*Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 675.) More narrow in focus than the Unruh Civil Rights Act, it generally guarantees people with disabilities equal rights of access "to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation." (*Munson*, at p. 674, fn. 8; see §§ 54, subd. (a), 54.1, subd. (a)(1).) As with the Unruh Civil Rights Act, the Legislature amended the Disabled Persons Act to incorporate ADA violations and make them a basis for relief under the act. (§§ 54, subd. (c), 54.1, subd. (d); *Munson*, at p. 674; *Wilson v. Murillo* (2008) 163 Cal.App.4th 1124, 1131.) The available remedies include actual damages (and in some cases as much as treble damages), with a $1,000 minimum recovery. (§ 54.3, subd. (a); *Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at p. 792.) Recognizing the overlap between the Unruh Civil Rights Act and the Disabled Persons Act, the Legislature expressly foreclosed double recovery. (§ 54.3, subd. (c); *Munson*, at p. 675.)

Section 55 is part of the Disabled Persons Act, but it offers an independent basis for relief. (*Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at

5

p. 792.)[6] It is broader in two respects than the private right of action authorized by section 54.3: section 55 extends standing to those "potentially aggrieved," not just those who have been actually denied access, and relief may be predicated on potential violations not only of sections 54 and 54.1 but also of various provisions in both the Government Code and the Health and Safety Code.[7] (§ 55; see *Turner v. Association of American Medical Colleges*, *supra*, 193 Cal.App.4th at p. 1059; *Molski*, at p. 792.) Section 55 is also narrower than section 54.3 in one significant respect: it authorizes only injunctive relief, not damages. (*Molski*, at p. 792.)

## II. *Section 55 Mandates Attorney Fees for Every Prevailing Party*

Here, Jankey sued (and lost) under each of the principal federal and state disability access laws—the ADA, the Unruh Civil Rights Act, and sections 54.3 and 55 of the Disabled Persons Act. Section 55, on which Lee predicated his fee request, is unique among these sources of law in containing a broadly worded two-way fee-shifting clause: "The prevailing party in the action" under section 55 "shall be entitled to recover reasonable attorney's fees." Before considering the interplay between this provision and the narrower fee provision of the ADA, we address, and reject, Jankey's challenge to the lower courts' conclusion that section 55 grants a prevailing defendant a mandatory right to fees.

---

**6** In full, section 55 provides: "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code, Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code, or Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees."

**7** Here, Jankey invoked relevant provisions of the Health and Safety Code, seeking injunctive relief for violations of Health and Safety Code section 19955 et seq.

6

Two aspects of the plain language of section 55 are dispositive. First, the statute was written to allow fees for a "prevailing party," not just a prevailing plaintiff. The Legislature knows how to write both unilateral fee statutes, which afford fees to either plaintiffs or defendants, and bilateral fee statutes, which may afford fees to both plaintiffs and defendants. "When the Legislature intends that the successful side shall recover its attorney's fees no matter who brought the legal proceeding, it typically uses the term 'prevailing party.' " (*Stirling v. Agricultural Labor Relations Bd.* (1987) 189 Cal.App.3d 1305, 1311; see also *Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at p. 790; cf. §§ 52.1, subd. (h) [attorney fees only for "petitioner or plaintiff"], 54.3, subd. (a) ["Any person" who violates specified statutes "is liable for . . . attorney's fees as may be determined by the court"].) The Legislature chose in section 55 to enact a bilateral fee statute, granting defendants as well as plaintiffs the opportunity for a fee award.

Second, while the determination that a defendant is a prevailing party is generally discretionary (see *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332), once a trial court determines that a defendant qualifies, the language of section 55 mandates a fee award: a prevailing party "shall be entitled" to reasonable fees. Here as well, the Legislature has routinely and clearly differentiated, using "may" in circumstances where it intends a fee award to be discretionary and "shall" in circumstances where it intends an award to be mandatory. (Compare, e.g., §§ 52.1, subd. (h) ["the court may award the petitioner or plaintiff reasonable attorney's fees"], 3426.4 ["the court may award reasonable attorney's fees"] with §§ 1785.31, subd. (d) ["prevailing plaintiffs . . . shall be entitled to recover . . . reasonable attorney's fees"], 3344, subd. (a) [prevailing party "shall . . . be entitled to attorney's fees"].)

Consistent with the plain language of section 55, every reported case to consider the question has concluded, as we do, that an award of fees to a

7

prevailing defendant is mandatory. (*Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at pp. 790-792; *Jones v. Wild Oats Markets, Inc.* (S.D.Cal. 2006) 467 F.Supp.2d 1004, 1011-1012; *Goodell v. Ralphs Grocery Co.* (E.D.Cal. 2002) 207 F.Supp.2d 1124, 1126-1127.)

Against the text of the statute and precedent, Jankey argues the legislative history behind section 55 shows the Legislature intended to afford only prevailing plaintiffs mandatory fees. Section 55 was enacted by Assembly Bill No. 2471 (1973-1974 Reg. Sess.). Jankey selectively cites passages from analyses of this measure that confirm the Legislature's intent to afford prevailing plaintiffs attorney fees, but never demonstrates that the Legislature did not also intend to afford fees to prevailing defendants. Indeed, the history is to the contrary and reveals a conscious choice to ensure prevailing defendants a right to fees. As originally drafted, the new injunctive provision would have granted fees only to prevailing plaintiffs. (Assem. Bill No. 2471 (1973-1974 Reg. Sess.) § 1, as introduced May 15, 1973 ["If successful in obtaining an injunction, the physically disabled person may be awarded reasonable attorney's fees . . . ."].) The Legislature specifically amended Assembly Bill No. 2471 to make the fee provision bilateral. (Assem. Bill No. 2471 (1973-1974 Reg. Sess.) § 1, as amended in Sen., Apr. 22, 1974 [substituting "prevailing party" language]; Legis. Counsel's Dig., Assem. Bill No. 2471 (1973-1974 Reg. Sess.) 2 Stats. 1974, Summary Dig., p. 242 [the law "[s]pecifies that prevailing party is entitled to reasonable attorney's fees."].) We would do violence to the language of the statute were we to disregard that change.[8]

_____

[8] Jankey's reliance on the legislative history of a predecessor bill, Assembly Bill No. 1547 (1972 Reg. Sess.) is equally unpersuasive. Like Assembly Bill No. 2471 (1973-1974 Reg. Sess.), Assembly Bill No. 1547 was originally drafted

*(footnote continued on next page)*

Jankey also argues section 55 is in pari materia with the ADA and other state laws protecting disability access, like the Unruh Civil Rights Act, and its fee provision thus should be interpreted similarly. But statutes on the same subject will be read in a consistent fashion only "to the extent their language permits." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1091.) The text of section 55 marks a clear departure from that of the Unruh Civil Rights Act (§ 52.1, subd. (h) [awarding fees only to a "petitioner or plaintiff"]) and the ADA (42 U.S.C. § 12205 [allowing that a court "in its discretion, may allow" fees]). Its fee provision mandates an award to all prevailing parties, including prevailing defendants.

**III.** *Section 55 Is Not Preempted*

**A.** *The ADA's Fee Regime*

We turn to Jankey's principal contention, that the ADA preempts section 55 insofar as the state law affords prevailing defendants a broader entitlement to recovery of attorney fees than would federal law.

In contrast with section 55, the ADA allows defendants fees only for responding to frivolous claims and makes fee recovery discretionary: "In any action or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." (42 U.S.C. § 12205.) As the legislative history shows clearly, Congress intended that discretion to be exercised in accord with principles set forth in *Christiansburg Garment Co. v. EEOC*, *supra*, 434 U.S. 412

---

*(footnote continued from previous page)*

to allow only prevailing plaintiffs attorney fees. (Assem. Bill No. 1547 (1972 Reg. Sess.) § 1, as introduced Mar. 15, 1972.) But unlike Assembly Bill No. 2471, it was never amended to extend fees to prevailing parties and went down to defeat.

9

(*Christiansburg*).  (See H.R.Rep. No. 101-485(II), 2d Sess., p. 140 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 423; H.R.Rep. No. 101-485(III), 2d Sess., p. 73 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 496.)  Under *Christiansburg*, while prevailing plaintiffs should receive fees unless an award would be unjust (*Christiansburg*, at pp. 416-417), prevailing defendants may receive fees only when the trial court finds that a plaintiff's claim is "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so" (*id.* at p. 422; see, e.g., *Bercovitch v. Baldwin School, Inc.* (1st Cir. 1999) 191 F.3d 8, 11 [holding that fees are available to an ADA defendant only upon a showing of frivolousness]; *Summers v. A. Teichert & Son, Inc.* (9th Cir. 1997) 127 F.3d 1150, 1154 [same]; *Bruce v. City of Gainesville, Ga.* (11th Cir. 1999) 177 F.3d 949, 951-952 [same]).  Jankey contends Congress's adoption of this more stringent federal standard should preempt the award of fees under a lesser state standard for overlapping work done to defend against both state and federal claims.

### B.  *General Preemption Principles*

"The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law." (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935; see U.S. Const., art. VI, cl. 2; *Arizona v. United States* (2012) 567 U.S. ___, ___ [132 S.Ct. 2492, 2500-2501].)  "Congress may exercise that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines:  conflict, obstacle, or field preemption." (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1059.)

In both express and implied preemption cases, whether preemption will be found in a given case depends foremost on congressional intent.  (*Wyeth v. Levine*

10

(2009) 555 U.S. 555, 565; *Brown v. Mortensen*, *supra*, 51 Cal.4th at pp. 1059-1060.)  Significantly, we begin with a presumption against preemption and will override that presumption only when Congress has made " 'clear and manifest' " its intent to displace state law with federal law.  (*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 485; accord, *Brown*, at p. 1060.)  As the party asserting preemption, Jankey has the burden of overcoming that presumption and establishing that Congress in fact intended to invalidate a law such as section 55.  (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 936.)

### C.  *Section 501(b) of the ADA*

Here, Congress has spoken to preemption directly:  a construction clause in the ADA spells out the act's intended effect on state laws.  The clause disavows any broad preemptive intent, instead permitting states to enact and enforce complementary laws:  "Nothing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any . . . law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act."  (42 U.S.C. § 12201(b) (hereafter sometimes ADA § 501(b)).)

On its face, this clause distinguishes state laws that afford equal or better protection to the disabled than the ADA from those that do not.  Laws in the former category are shielded from preemption; nothing in the ADA "shall be construed to invalidate or limit the remedies, rights, and procedures" they provide those with disabilities.  (42 U.S.C. § 12201(b).)[9]  Laws in the latter category are,

---

[9]  See also House of Representatives Reports, report No. 101-485(II), 2d Session, page 135 (1990), reprinted in 1990 United States Code Congressional and Administrative News, page 418 ("Congress does not intend to displace any of the

*(footnote continued on next page)*

by negative implication, not shielded from preemption. The construction clause, however, does not expressly preempt these less protective laws; it does not categorically declare that any law providing lesser protection than the ADA is invalid. In the absence of either express preemption or a shield against preemption, it follows that such laws are invalid to the extent standard conflict or obstacle preemption principles would require their displacement.[10]

We previously have recognized the congressional " 'power to preclude conflict [and obstacle] preemption, allowing states to enforce laws even if those laws are in direct conflict with federal law or frustrate the purpose of federal law.' " (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 945, fn. 9; see *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 872 [acknowledging that Congress has the constitutional power to limit implied preemption].) Congress can determine that, so long as a state law affords equal or greater protection than the ADA, it categorically should be treated as not preempted. (See *Wood v. County of Alameda* (N.D.Cal. 1995) 875 F.Supp. 659, 663-664 [ADA § 501(b) is intended to ensure plaintiffs are never denied on preemption grounds the benefits of such

---

*(footnote continued from previous page)*

rights or remedies available under other . . . state laws . . . which provide greater or equal protection to individuals with disabilities."); House of Representatives Reports, report No. 101-485(III), 2d Session, page 70 (1990), reprinted in 1990 United States Code Congressional and Administrative News, page 493 (same).

[10]     In contrast, neither express nor field preemption bears on state laws protecting the rights of individuals with disabilities. ADA section 501's construction clause aside, the ADA contains no express preemption clause. As well, ADA section 501's express preservation of the several states' authority to regulate in the area of disability discrimination negates any argument that Congress intended to occupy the field of disability rights protection.

compatible state statutes].) Our first task, then, is to determine whether section 55 qualifies as such a law.

Neither the text of the construction clause nor any other language in the ADA addresses how to determine whether a state law affords equal or greater protection than the ADA. Accordingly, we may turn to the legislative history for insight. (E.g., *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 770.) The committee reports explaining the construction clause reveal an intent that a state law should qualify for protection from preemption whenever at a minimum *some part* of it is superior to the ADA in the protection it affords, such that an individual with a disability might choose to invoke it, even if the law may in other respects provide procedures or remedies that are arguably inferior.

ADA section 501(b) was intended to ensure "all of the rights, remedies and procedures that are available to people with disabilities under . . . other state laws (including state common law) are not preempted by this Act." (H.R.Rep. No. 101-485(II), 2d Sess., p. 135 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 418; H.R.Rep. No. 101-485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 493; see *Wood v. County of Alameda*, *supra*, 875 F.Supp. at p. 663 [the purpose of ADA § 501(b) is to "maximize the options available to plaintiffs"].) In lieu of broadly preempting every arguably lesser state remedy, Congress elected to maximize individuals' freedom to select whichever legal remedies they desired: "A plaintiff may choose to pursue claims under a state law that does not confer greater substantive rights, or even confers fewer substantive rights, if the plaintiff's situation is protected under the alternative law and the remedies are greater." (H.R.Rep. No. 101-485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 493.) The House Judiciary Committee gave as one example this state's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), which at the time unlike the ADA did not protect

13

those with mental disabilities, but did offer superior damages remedies. Such a law should not be construed as conferring lesser rights because of its narrower scope; rather, ADA section 501(b) and the ADA as a whole should be read to preserve individuals' rights to decide whether to sue under the state law as well, or instead. (H.R.Rep. No. 101-485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 493.)

The House Judiciary Committee's report reflects a congressional desire to preserve for the several states the ability to provide those with disabilities additional remedial options, even options that might in some respects be less inclusive than federal law or offer lesser relief, if another feature of the state avenue for redress might render it more desirable or beneficial. Essentially, Congress embraced a cafeteria approach in which those with disabilities, rather than being restricted to a single federal remedy, could pick and choose from among federal and state remedies and procedures the avenues for relief they thought most advantageous. It follows that if a state remedial scheme is in any regard superior to the ADA, courts should conclude it is not preempted and instead allow plaintiffs the choice whether to seek relief under federal law, state law, or both.

Applying this approach to preemption, we think it evident section 55 qualifies as a state law that affords, in at least some respects, greater protection compared to the ADA. Most notably, section 55's standing provision is broader than its federal counterpart. Under state law, because a plaintiff need only show he or she is "aggrieved or potentially aggrieved" (§ 55) to seek injunctive relief, "virtually any disabled person can bring an action to compel compliance with" state disability access guarantees (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 266). In contrast, the ADA requires proof of ongoing disability discrimination or reasonable grounds to believe the plaintiff is

14

"about to be subjected to" such discrimination.  (42 U.S.C. § 12188(a)(1).)  A personal stake is essential; "[t]he ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries."  (*McInnis-Misenor v. Maine Medical Center* (1st Cir. 2003) 319 F.3d 63, 69; see also *Chapman v. Pier 1 Imports (U.S.), Inc.* (9th Cir. 2011) 631 F.3d 939, 946 (en banc) [to obtain injunctive relief under the ADA, an access plaintiff "must demonstrate a 'real and immediate threat of repeated injury' in the future"].)  Thus, while courts have issued injunctive relief under state law without requiring proof that a plaintiff intends to encounter or has been deterred from encountering a given architectural barrier,[11] courts interpreting the ADA have generally required more, denying injunctive claims for want of standing in the absence of evidence a plaintiff intends to use a facility or would do so but for the presence of the challenged barrier.[12]  Accordingly, an individual with a disability might choose to

---

[11]     See *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 526 (upholding injunctive relief for a plaintiff who never attempted to use a noncompliant wheelchair lift because the plaintiff was still "at least potentially aggrieved"); *Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at page 792 (a § 55 plaintiff "will not be required to prove an actual attempt to access the facility" in order to obtain relief).

[12]     See, e.g., *Steger v. Franco, Inc.* (8th Cir. 2000) 228 F.3d 889, 893 (rejecting the standing of access plaintiffs who argued simply that "they are disabled and may enter the building in the future."); *McInnis-Misenor v. Maine Medical Center*, *supra*, 319 F.3d at pages 68-73 (affirming dismissal on standing grounds where a disabled plaintiff could show only that she potentially might encounter architectural barriers in a hospital, not that a denial of access was imminent); Milani, *Wheelchair Users Who Lack "Standing": Another Procedural Threshold Blocking Enforcement of Titles II and III of the ADA* (2004) 39 Wake Forest L.Rev. 69, 84-85 and footnote 68 (collecting cases).

sue under section 55, in addition to or instead of the ADA, because of this lower standing hurdle. ADA section 501(b) preserves against preemption such a law.[13]

Notably, it matters not for purposes of ADA preemption that other aspects of section 55, such as the differing attorney fee regime, might be viewed as less advantageous.[14] ADA section 501(b) relieves courts of the need to parse every aspect of a state law to determine whether, on balance, the state law is equally or more advantageous as a whole. Instead, that question is left to individual plaintiffs who may pick and choose the remedies they think worth invoking according to their particular circumstances.

Jankey argues that ADA section 501(b) is an express preemption clause, that it nullifies all state laws less protective of the rights of the disabled than the

---

[13] Standing is not the only way in which section 55 is broader than the ADA. Section 55 enforces a range of state access requirements above and beyond those contained in the ADA and its enabling regulations. (See § 55; Gov. Code, § 4450 et seq.; Health & Saf. Code, § 19955 et seq.) For purposes of preemption, however, we need only identify at least one superior aspect of the state law remedy.

[14] Whether all would-be plaintiffs would in fact view the different state law fee regime as less desirable than the ADA's regime is unclear. Some potential plaintiffs might prefer the state rule, under which every prevailing plaintiff is "entitled" to recover reasonable attorney fees (§ 55), to the federal rule, under which fees can be denied a prevailing plaintiff if " 'special circumstances would render such an award unjust' " (*Christiansburg*, *supra*, 434 U.S. at pp. 416-417, quoting *Newman v. Piggie Park Enterprises* (1968) 390 U.S. 400, 402). And some plaintiffs might prefer as well the possibility of recovering fees under a catalyst theory, available under section 55 but not the ADA. (Compare *Mundy v. Neal* (2010) 186 Cal.App.4th 256, 259 [recognizing that under § 55 a plaintiff might recover fees for triggering voluntary changes in a defendant's conduct] with *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources* (2001) 532 U.S. 598, 610 [holding that the ADA does not authorize catalyst theory recovery, instead requiring a favorable judgment or consent decree].)

16

ADA, and that section 55 is such a law. We are not persuaded. First, as we have discussed, the text of ADA section 501(b) and the legislative history behind it reveal it not as an express preemption clause but as a clause insulating from preemption any state laws offering better protections in some respect. Second, Jankey's contention that section 55 is less protective rests entirely on his assumption that all that matters is what protection or benefit he ultimately obtained from invoking section 55 in this case. This assumption is unfounded. Congress contemplated that state laws would be protected from ADA preemption if in principle they afforded superior protections in some regard. (See H.R.Rep. No. 101-485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 493.) As we have discussed, section 55 does so. Clearly Jankey himself at the time of filing saw some benefit to adding a section 55 claim to his ADA claim or else he would have omitted it. Having invoked section 55, he cannot now be heard to complain that it has brought him only a bill for attorney fees.

### D. Hubbard *and Conflict Preemption*

In a single paragraph, and without addressing the import of ADA section 501(b), the Ninth Circuit reached a contrary conclusion. (*Hubbard v. SoBreck, LLC*, *supra*, 554 F.3d at p. 745.) *Hubbard* reasoned that where parallel state and federal claims are filed, such that the work in defending the two claims overlaps, a grant of fees on the state law claim "is necessarily a grant of fees as to the ADA claim." (*Ibid*.) In such circumstances, if state law provides for fees where federal law does not, there is a conflict and the state law must yield. (*Ibid.*; see *PLIVA, Inc. v. Mensing* (2011) 564 U.S. ___, ___ [131 S.Ct. 2567, 2577] ["Where state and federal law 'directly conflict,' state law must give way."])

We disagree with the Ninth Circuit's premise, that fees for defending a state law claim are necessarily fees for ADA work if the claims overlap. Lee would have been entitled to the same fees whether or not Jankey pleaded an ADA

17

claim; the pleading of an ADA claim was neither a necessary nor a sufficient cause of the fee award. The fee award here is not in any meaningful sense for or on account of having to defend against an ADA claim, but instead a consequence of Jankey's purely voluntary decision to seek additional state remedies. State law does not declare ADA fees compensable, only section 55 fees; it does not dictate an outcome at odds with federal law.[15]

*Gagliardo v. Connaught Laboratories, Inc.* (3d Cir. 2002) 311 F.3d 565 illustrates that an award made under a parallel and overlapping state claim is not perforce an award made under the ADA. There, the plaintiff sued under both the ADA and a "virtually identical" state statute and obtained a $2.5 million judgment, undifferentiated as between the two claims. (*Id.* at p. 570.) The defendant argued on appeal that a federal statute capping damages under the ADA necessarily limited the damages award. (See 42 U.S.C. § 1981a(b)(3).) Drawing on the reasoning of two title VII cases, *Passantino v. Johnson & Johnson Consumer Products* (9th Cir. 2000) 212 F.3d 493 and *Martini v. Fed. Nat. Mortgage Assn.* (D.C. Cir. 1999) 178 F.3d 1336, the Third Circuit disagreed. It explained that a state can authorize liability and damages for the very same acts prohibited by the ADA without any such award constituting an award for ADA violations and violating the ADA ceiling. (*Gagliardo*, at pp. 570-572.) So it is here; an attorney fee award under state law for defending against a nearly identical state law claim does not automatically become an award under the ADA, even if the same work is

---

**15** Jankey repeatedly describes section 55 as a law imposing fees "for" a nonfrivolous ADA action. Such a law *would* be preempted; a state law that provided state court defendants with prevailing party fees for defending against federal ADA access claims under 42 United States Code section 12182 would, in fact, conflict with federal law. But section 55 does no such thing.

involved, and thus need not conflict with the ADA's limits on defense attorney fees.

The Ninth Circuit's finding of conflict preemption implicitly rests on the view that Congress not only established the rule for awarding attorney fees incurred on account of defending an ADA claim, but also intended to immunize plaintiffs from paying for any of that same work, absent grounds for payment under the ADA, even when it was also necessary to defend against an overlapping state law claim. From the text of the ADA we discern no such intent. Similarly, nothing in the available committee reports discussing the ADA suggests Congress even considered the question. Absent congressional intervention, California has every right to adopt whatever fee regime it deems appropriate upon invocation of state law remedies. It may establish both the costs of and the potential payoffs for seeking a state remedy while leaving undisturbed the corresponding costs and payoffs that flow from invocation of a comparable federal remedy.

Accordingly, we respectfully disagree with the Ninth Circuit's conclusion that conflict preemption forecloses an award of fees for a section 55 claim that overlaps with a nonfrivolous ADA claim.

### E. *Obstacle Preemption*

Jankey argues that application of section 55's fee-shifting provision is preempted because it stands as an obstacle to the purposes and objectives of Congress in limiting the recovery of fees for defending against ADA claims. (See *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372-373; *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 936.) Even if we set aside ADA section 501(b)'s insulation of statutes like section 55 from obstacle preemption, we can identify no way in which the fee award here poses a barrier to congressional objectives.

19

As Jankey correctly notes, the policy behind the ADA's fee standard is the policy behind the *Christiansburg* standard for a defendant's recovery of attorney fees. The United States Supreme Court identified a pair of competing considerations underlying its selection of that standard. On the one hand, Congress "wanted to protect defendants from burdensome litigation having no legal or factual basis." (*Christiansburg*, *supra*, 434 U.S. at p. 420; accord, *Fox v. Vice* (2011) 563 U.S. ___, ___, fn. 3 [131 S.Ct. 2205, 2215, fn. 3].) On the other, "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of [civil rights law]." (*Christiansburg*, at p. 422.) Fee awards in cases other than those truly "unreasonable or without foundation . . . . could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." (*Ibid.*) The differentiated approach to fee awards in civil rights cases, with prevailing plaintiffs recouping fees more readily than prevailing defendants, is necessary to "advance[] the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation." (*Roadway Express, Inc. v. Piper* (1980) 447 U.S. 752, 762.)

These policies are not implicated in cases where a plaintiff voluntarily invokes a state law remedy that overlaps with the ADA. The heightened ADA standard for defense fee awards, requiring a showing of frivolousness, is intended to avoid chilling the assertion of ADA claims. But because it is only the invocation of the state law remedy, and not the ADA, that triggers the award of fees in cases of overlap, it is only the state law remedy, and not the ADA, that stands to be chilled by the broader availability of defense fees. Plaintiffs can always sue under the ADA alone, safe in the knowledge that even if they lose,

20

defense fees will be available only in accordance with *Christiansburg*. Alternatively, they can add one or more state law remedies if they view the potential benefits as superior to the potential burdens. If instead the risks appear to exceed the potential rewards, they can omit a given state law claim, at no loss to enforcement of their ADA rights. (See *Molski v. Arciero Wine Group*, *supra*, 164 Cal.App.4th at p. 792; *Goodell v. Ralphs Grocery Co.*, *supra*, 207 F.Supp.2d at p. 1129.) Such a regime is fully consistent with Congress's apparent willingness to allow plaintiffs to freely determine what remedies they pursue. (See H.R.Rep. No. 101-485(III), 2d Sess., p. 70 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 493; *Wood v. County of Alameda*, *supra*, 875 F.Supp. at pp. 663-664.) Congress's concern about not discouraging would-be plaintiffs from availing themselves of the *ADA* thus offers no reason to preclude states from establishing different fee award regimes for independently established state law remedies.

These conclusions do not shift if, as Jankey urges, we focus solely on the application of section 55 in this case. (See *Crosby v. National Foreign Trade Council*, *supra*, 530 U.S. at p. 373 [obstacle preemption turns on whether, " 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " quoting *Hines v. Davidowitz* (1941) 312 U.S. 52, 67].) Nothing in the prospect of owing attorney fees under section 55 could have deterred Jankey from invoking his federal ADA rights here. He asserted them, and the trial court concluded they had not been impaired, a conclusion Jankey has not challenged. Nor will the fee award chill Jankey or others from asserting ADA rights in the future. It may inspire reluctance to invoke section 55 rights, but that is a matter for the Legislature to consider; it is no concern of Congress's, and it is no basis for finding preemption.

**IV.** *Fees for Work Overlapping Defense of the ADA Claim Are Not Barred Under State Law*

Preemption aside, Jankey and amicus curiae the Impact Fund argue that state law should be read to foreclose fees for overlapping work done to defend against both ADA and section 55 claims. The general rule is that where a non-fee-shifting claim overlaps with a fee-shifting claim, it does not limit fee awards under the fee-shifting claim. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130.) An exception may arise where to award fees on the fee-shifting claim would impair legislative policies implicated by the respective claims. (E.g., *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342-343 ["The issue of the proper amount of fees to be awarded when an attorney's time is attributable to recoverable and nonrecoverable claims depends on the legislative intent and policies underlying the specific fee-shifting scheme at issue."]; *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 504-506; cf. *Fox v. Vice*, *supra*, 131 S.Ct. at p. 2215 [under federal law, limiting the amount of fees for overlapping work based on a determination that Congress so intended].) But as discussed in connection with conflict preemption, we have found no indication in the ADA or its legislative history that Congress intended state fees for overlapping state claims to be foreclosed, nor, as discussed in connection with obstacle preemption, are we able to discern any policy that would be impaired. Likewise, we have found nothing in the text or sparse legislative history of section 55 to indicate fee recovery should be limited as a matter of state law based on overlap with federal remedies. Accordingly, we decline to read state law as limiting an award of section 55 fees on this basis.[16]

---

[16] Jankey and amicus curiae the Impact Fund also argue that section 55 does not authorize fees for work overlapping with Unruh Civil Rights Act and section 54.3 defense. (See *Turner v. Association of American Medical Colleges*, *supra*,

*(footnote continued on next page)*

## DISPOSITION

The Court of Appeal's judgment is affirmed.  Lee seeks his costs and attorney fees on appeal.  As the prevailing party, he is entitled to costs and, under section 55, to appellate attorney fees as well.  (See *Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927.)  On remand, the trial court is to fix the amounts.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

---

*(footnote continued from previous page)*

193 Cal.App.4th at p. 1054.)  Jankey did not raise the issue in the trial court, the Court of Appeal, or the petition for review.  Because the issue is thus waived, we do not consider it.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Jankey v. Lee

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 181 Cal.App.4th 1173
**Rehearing Granted**


_____

**Opinion No.** S180890
**Date Filed:** December 17, 2012

_____

**Court:** Superior
**County:** San Francisco
**Judge:** Patrick J. Mahoney


_____

**Counsel:**

Thomas E. Frankovich; Law Offices of Lynn Hubbard and Scottlynn J. Hubbard IV for Plaintiffs and Appellants.

Brag Seligman for the Impact Fund, Disability Rights Advocates, Disability Rights California, Disability Rights Education and Defense Fund, Disability Rights Legal Center, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Public Advocates, Public Counsel, Public Justice and the Western Center on Law and Poverty as Amici Curiae on behalf of Plaintiffs and Appellants.

Law Offices of Charles S. Roseman, Charles S. Roseman, Richard D. Prager; LaFave & Rice, John J. Rice; Law Office of Gary L. Simms and Gary L. Simms for Rosa Miller, Manuel Miller, Ana Maya, Blanca Miller and Aida Masliah as Amici Curiae on behalf of Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad, Andrea M. Gauthier; Livingston Law Firm, Renée Welze Livingston and Jason G. Gong for Defendant and Respondent.

Dennis J. Herrera, City Attorney, Danny Chou, Chief of Complex and Special Litigation, and James M. Emery, Deputy City Attorney, for League of California Cities as Amicus Curiae on behalf of Defendant and Respondent.

Weintraub Genshlea Chediak, Lizbeth V. West, Charles L. Post and Brenda J. Begley for the California Hotel & Lodging Association, the Golden Gate Restaurant Association, the California Parks Company, the California Restaurant Association, the California Business Properties Association, Small Business California, the San Francisco Chamber of Commerce, Building Owners and Managers Association of California, the California Building Industry Association, the National Federation of Independent Business Small Business Legal Center and the California Chamber of Commerce as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Scottlynn J. Hubbard IV
Law Offices of Lynn Hubbard
12 Williamsburg Lane
Chico, CA  95926
(530) 895-3252

Brag Seligman
Impact Fund
125 University Avenue, Suite 102
Berkeley, CA  94710
(510) 845-3473

David M. Axelrad
Horvitz & Levy
15760 Ventura Boulevard, 18th Floor
Encino, CA  91436-3000
(818) 995-0800