Filed 4/2/14   certified for publication 4/18/14 (order not available)


SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

APPELLATE DIVISION


| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Appellant,<br><br>v.<br><br>HORACIO ROQUE SANTORSOLA,<br>    Defendant and Respondent. | Case No:   ACRAS 1300083<br>(Trial Court:  MWV 1201986)<br><br><br>O P I N I O N |

Appeal from judgment, San Bernardino County Superior Court, Rancho Cucamonga District, Stephan G. Saleson, Judge.  Reversed.

Michael A. Ramos, District Attorney, and Brent J. Schultze for Plaintiff and Appellant.

Schiff Hardin LLP, Bruce A. Wagman; and Peter A. Brandt for Mercy for Animals and The Humane Society of the United States as Amici Curiae on behalf of Plaintiff and Appellant.

The Law Offices of Kirk M. Tarman and Kirk M. Tarman for Defendant and Respondent.

**THE COURT**[*]

## FACTS

On May 25, 2012, defendant and respondent, Horacio Roque

Santorsola, along with others, was charged with nine counts of cruelty to

---

[*] Alvarez, P. J., West, J., and Yabuno, J.

1

an animal in violation of Penal Code section 597, subdivision (b).  On April 24, 2013, the complaint was amended to add nine additional counts charging respondent with having received, improperly held, or improperly moved a nonambulatory animal in violation of Penal Code section 599f.[1] On May 30, 2013, during the trial of this action, the court made a determination that the charges based on Penal Code section 599f were preempted by the Federal Meat Inspection Act (FMIA) based on the decision of the United States Supreme Court in *Nat'l Meat Ass'n v. Harris* (2012) __ U.S. __, [132 S.Ct. 965, 181 L.Ed.2d 950].  On June 17, 2013, plaintiff and appellant, People of the State of California, noticed their appeal of that determination pursuant to Penal Code section 1466.[2]

## DISCUSSION

The People contend that the trial court erred in its determination that section 599f was preempted.  "The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1048.)  "Congress may exercise

---

[1] Penal Code section 599f requires "immediate action to humanely euthanize" nonambulatory animals and provides that "While in transit or on the premises of a stockyard, auction, market agency, dealer, or slaughterhouse, a nonambulatory animal may not be dragged at any time, or pushed with equipment at any time, but shall be moved with a sling or on a stoneboat or other sled-like or wheeled conveyance." (Pen. Code, § 599f, subd. (d), (e).)  Each count alleged against the respondent charged him with dragging a nonambulatory animal and not euthanizing it.

[2] "An appeal may be taken from a judgment or order, in an infraction or misdemeanor case, to the appellate division of the superior court of the county in which the court from which the appeal is taken is located, in the following cases: (a) By the people: … (2) From an order or judgment dismissing or otherwise terminating all or any portion of the action…." (Pen. Code, § 1466, subd. (a)(2).)

that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines: conflict, obstacle, or field preemption." (*Ibid.*) "In both express and implied preemption cases, whether preemption will be found in a given case depends foremost on congressional intent." (*Ibid.*) "If a statute contains an express pre-emption clause, our task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1060, internal quotation marks omitted.) "Second, [i]n all pre-emption cases, and particularly in those in which Congress has "legislated … in a field which the States have traditionally occupied, … we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (*Ibid.*, internal quotation marks omitted.)

In *National Meat Association v. Harris*, the United States Supreme Court invalidated the application of Penal Code section 599f to a slaughterhouse's treatment of nonambulatory animals holding that the Federal Meat Inspection Act (FMIA), 21 U.S.C. §601 *et seq.*, "expressly preempts … California law dictating what slaughterhouses must do with pigs that cannot walk, known in the trade as nonambulatory pigs." (*Nat'l Meat Ass'n v. Harris* (2012) __ U.S. __, [132 S.Ct. 965, 968,181 L.Ed.2d

3

950].)  The court noted that the FMIA "contains an express preemption provision…." (*Id.* at 969.)  That provision states, "Requirements within the scope of this Act with respect to premises, facilities and operations of any establishment *at which inspection is provided under title I of this Act*, which are in addition to, or different than those made under this Act may not be imposed by any State or Territory or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of section 202 of this Act, if consistent therewith, with respect to any such establishment."  (21 U.S.C.S. § 678, emphasis added.)  As respondent notes, "the FMIA's preemption clause covers not just conflicting, but also different or additional state requirements" and "therefore precludes California's effort in §§ 599f(b) and (c) to impose new rules, beyond any the [Food Safety and Inspection Service (FSIS)] has chosen to adopt, on what a slaughterhouse must do with a pig that becomes nonambulatory during the production process."  (*Nat'l Meat Ass'n v. Harris*, *supra*, 132 S.Ct. at 971.)  However, the FMIA has a savings clause providing, "This Act shall not preclude any State or Territory or the District of Columbia from making requirement [requirements] or taking other action, consistent with this Act, with respect to any other matters regulated under this Act."  (21 U.S.C.S. § 678.)

The People argue that section 599f is preempted only to the extent that it seeks to regulate premises, facilities and operations of

establishments at which inspections are provided under the FMIA and so does not preempt the provisions that apply to livestock auctions like those conducted by respondent, which are contained in subdivisions (d) and (e) of section 599f.  Respondent argues that there is no language in *Harris* that specifically singles out auction houses as exempt from the FMIA contending that the Supreme Court specifically referenced slaughterhouses only because the petitioner there, National Meat Association (NMA), was "a trade association representing meatpackers and processors, including operators of swine slaughterhouses" and "sued to enjoin the enforcement of §599f against those slaughterhouses…." (*Nat'l Meat Ass'n v. Harris*, *supra*, 132 S.Ct. at 970.)

In *Harris*, the Supreme Court noted, "The FMIA regulates a broad range of activities at slaughterhouses to ensure both the safety of meat and the humane handling of animals." (*Nat'l Meat Ass'n v. Harris*, *supra*, 132 S.Ct. at 968.)   "The regulations implementing the FMIA … prescribe methods for handling animals humanely at all stages of the slaughtering process." (*Id.* at 969.)  "Those rules apply from the moment a truck carrying livestock 'enters, or is in line to enter,' a slaughterhouse's premises." (*Ibid.*)  Their "scope includes not only 'animals that are going to be turned into meat,' but animals on a slaughterhouse's premises that will never suffer that fate." (*Id.* at 973.)  In addressing the scope of the FMIA's preemption clause, the Supreme Court noted, the "clause expressly

5

focuses on 'premises, facilities and operations'—at bottom, the slaughtering and processing of animals at a given location." (*Id.* at 972.)

The FMIA provides that "the Secretary shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of all amenable species before they shall be allowed to enter into any slaughtering, packing, meat-canning, rendering, or similar establishment in which they are to be slaughtered…." (21 U.S.C.S. § 603(a).) Respondent argues that his auction is a "similar establishment" and so within the preemptive scope of FMIA, but does not address the statutory language identifying such establishments as ones in which amenable species are to be slaughtered. The FMIA states, "For the purpose of preventing the inhumane slaughtering of livestock, the Secretary shall cause to be made, by inspectors appointed for that purpose, *an examination and inspection of the method by which amenable species are slaughtered and handled in connection with slaughter in the slaughtering establishments inspected under this Act.*" (21 U.S.C.S. § 603(b), emphasis added.) The FMIA also requires "a post-mortem examination and inspection of the carcasses and parts thereof of all amenable species to be prepared at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment…." (21 U.S.C.S. § 604.) It provides that "The foregoing provisions shall apply to all carcasses or parts of carcasses of amenable species, or the meat or meat products thereof which may be brought into any slaughtering, meat-

6

canning, salting, packing, rendering, or similar establishment…." (21 U.S.C.S. § 605.) "The inspectors provided for herein shall be authorized to give official certificates of the condition *of the carcasses and products of amenable species*…." (21 U.S.C.S. § 618, emphasis added.) Respondent does not identify any part of the FMIA that would require inspection of an auction where cattle are bought and sold, but are not killed, canned, salted, packed, or rendered and this court has not found any such provision.

Nor do the federal regulations governing the inspections under the FMIA show an intent to extend the scope of inspections beyond those at the places where animals are killed and their carcasses processed. Inspections under those regulations are required at: "Every establishment … in which any livestock are slaughtered for transportation or sale as articles of commerce, or in which any products of, or derived from, carcasses of livestock are, wholly or in part, prepared for transportation or sale as articles of commerce, which are intended for use as human food;" those "at which any livestock are slaughtered or any products of any livestock are prepared, for use as human food solely for distribution within such jurisdiction;" and those designated as "producing adulterated

7

products which would clearly endanger the public health." (9 C.F.R. §

302.1(a)(1)-(3).)[3]

The Code of Federal Regulations requires that "All livestock offered for slaughter in an official establishment shall be examined and inspected on the day of and before slaughter unless, because of unusual circumstances, prior arrangements acceptable to the Administrator have been made in specific cases by the circuit supervisor for such examination and inspection to be made on a different day before slaughter." (9 C.F.R § 309.1(a).)  Official establishment is defined as "Any slaughtering, cutting, boning, meat canning, curing, smoking, salting, packing, rendering, or similar establishment at which inspection is maintained under the regulations in this subchapter." (9 C.F.R § 301.2.)[4]  **"Such ante-mortem inspection shall be made in pens on the premises of the establishment at which the livestock are offered for slaughter before the livestock shall be allowed to enter into any department of the establishment where they are to be slaughtered or dressed or in which edible products are handled." (9 C.F.R § 309.1(b).)  "When the holding pens of an official establishment are

---

[3] There are exceptions, not relevant here, to these inspection requirements for animals killed by the persons who raised them, for custom slaughter for the household use of the owner of the animal, for operations traditionally conducted in restaurants and retail stores, and in unorganized Territories.  (9 C.F.R. § 303.1(a)-(d).)

[4] Amici note that the Department of Agriculture and the FSIS, in response to regulations seeking to "ensure more effective and efficient inspection procedures under the Federal Meat Inspection Act (FMIA), 21 U.S.C. 603, and improved compliance with the humane handling requirements established pursuant to 21 U.S.C. 603(b)[,]" have stated the "FSIS has no authority over the handling of cattle at auction markets, stockyards, or in transport vehicles before they reach official establishments."  (74 Fed.Reg. 11463, 11463-11464.)

located in a public stockyard and are reserved for the exclusive use of the establishment, such pens shall be regarded as part of the premises of that establishment and the operator of the establishment shall be responsible for compliance with all requirements of the regulations in this subchapter with respect to such pens." (9 C.F.R § 309.1(b).) There is nothing in the record that would show that respondent's auction is a holding pen located in a public stockyard and reserved for the use of an official establishment, and so respondent's auction is not brought within the preemptive scope of the FMIA by the regulations governing its enforcement.

Because respondent's auction is not an establishment subject to inspection under the FMIA, the charges alleged against respondent based on the violation of Penal Code section 599f, subdivisions (d) and (e) are not preempted and the judgment of the trial court dismissing those charges is reversed.

**DISPOSITION**

The order of the trial court dismissing the charges based on the violation of Penal Code section 599f is reversed and this matter is remanded for further proceedings consistent with this opinion.