Filed 7/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| SETH FLOWERS et al., | B260140 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. PC053779) |
| v. |  |
| BRINDA PRASAD et al., |  |
| Defendants and Respondents. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen H. Pfahler, Judge. Reversed and remanded with directions.

Litigation & Advocacy Group and Glenn A. Murphy for Plaintiffs and Appellants.

James S. Link for Defendants and Respondents.

In the underlying action for disability discrimination, appellants John and Seth Flowers alleged that they were denied service at respondents' restaurant due to John Flowers's service dog. In sustaining a demurrer and granting summary adjudication in respondents' favor, the trial court concluded that appellants could assert a claim under the Disabled Persons Act (DPA) ( Civ. Code, §§ 54 - 55.3.), but not under the Unruh Civil Rights Act (Unruh Act) (Civ. Code, §§ 51, 52).[1] Following those rulings, at appellants' request, the court dismissed their action with prejudice. We reverse the order of dismissal and remand.

## RELEVANT FACTUAL AND
## PROCEDURAL BACKGROUND

Appellants' complaint, filed September 26, 2012, contains claims under the Unruh Act and the DPA, as well as claims for intentional infliction of emotional distress and negligent hiring, training, and supervision of employees.[2] The complaint alleges that respondent Brinda Prasad owns respondent Valley India Café, Inc., which operates a restaurant in Canoga Park. The complaint further alleges that John is a disabled person with a licensed service dog, and that he and his son Seth have been denied service at the restaurant due to the service dog. The complaint sought an award of damages, and injunctive relief under the Unruh Act (§ 52). The complaint was later amended to name respondents Rajendra Prasad, Velayuthan Sappaniapillai, and Prakash Abraham as Doe defendants.

---

[1]     Further statutory citations are to the Civil Code unless otherwise indicated.

[2]     Because appellants share a surname, we generally refer to them by their first names.

In September 2013, Sappaniapillai and Abraham demurred to the Unruh Act claim, contending that because the DPA -- unlike the Unruh Act – contains express provisions addressing discrimination related to the use of service dogs, appellants could state a discrimination claim only under the DPA. The trial court agreed, concluding that the DPA was more specific regarding disability discrimination than the Unruh Act, and that the statutes were inconsistent because the Unruh Act provided for a greater minimum award of damages than the DPA. The court sustained the demurrer to the Unruh Act claim, and afforded only Seth leave to amend. Seth filed no amended complaint.

In March 2014, the other respondents sought summary adjudication regarding the Unruh Act claim on the ground asserted in the demurrer. The trial court granted the motion. In September 2014, appellants requested a dismissal of their claims with prejudice to expedite appellate review of the rulings on the demurrer and grant of summary adjudication. On October 17, 2014, the court entered a judgment of dismissal. This appeal followed.

## DISCUSSION

Appellants contend the trial court erred in sustaining the demurrer and granting summary adjudication with respect to the Unruh Act claim. For the reasons discussed below, we agree.

A. *Appealability*

At the threshold, we address respondents' contention that the judgment is not appealable. Ordinarily, the voluntary dismissal of a complaint with prejudice does not result in an appealable judgment. (*Austin v. Valverde* (2012) 211 Cal.App.4th 546, 550-551 (*Austin*).) However, "'appellate courts treat a voluntary

3

dismissal with prejudice as an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling.'" (*Id.* at p. 551, quoting *Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1012.) The rationale for that exception is that such dismissals are "'not really voluntary . . . .'" (*Austin*, *supra*, 211 Cal.App.4th at p. 550, quoting *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793.) Here, respondents maintain that the voluntary dismissal was "truly voluntary." We disagree.

In *Austin*, a driver sought mandamus after the Department of Motor Vehicles (DMV) suspended his license due to a finding that he had driven while intoxicated. (*Austin*, *supra*, 211 Cal.App.4th at pp. 548-549.) When the trial court declined to afford the driver a copy of the DMV administrative record without the payment the court deemed to be due, he requested the voluntary dismissal of his petition with prejudice in order to expedite appellate review of that ruling. (*Id.* at pp. 549-555.) The court granted the request. (*Ibid.*) The appellate court concluded that the order of dismissal fell within the exception stated above, and was thus appealable. (*Id.* at pp. 550-552.)

The circumstances here are materially identical to those in *Austin*. After the adverse rulings regarding the Unruh Act claim and shortly before trial, appellants filed a request for the dismissal of their claims, stating that they wished to "hasten the transfer of this case to the appellate court for review . . . ." To demonstrate the arguments to be made on appeal, they submitted an unpublished federal court decision in a disability discrimination action rejecting the contention respondents had successfully asserted in their demurrer and summary adjudication motion. Following a hearing, the trial court entered the order of dismissal, which expressly

4

reflects that appellants sought "to expedite appellate review of adverse rulings . . . ." The order of dismissal is thus appealable.[3]

B. *Governing Principles*

We therefore turn to appellants' contention. Generally, orders sustaining demurrers and granting summary adjudication are reviewed de novo. (*Krantz v. BT Visual Images, L.L.C.* (2001) 89 Cal.App.4th 164, 167.) Here, the rulings hinge on a question of law, namely, the application of the canon of statutory interpretation stated in Code of Civil Procedure section 1859, which provides: "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

A specific provision controls over a general provision when the provisions are "irreconcilable." (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960.) For that reason, the application of the rule stated above requires an inquiry into whether the provisions can be harmonized in a manner reflecting the Legislature's intent. Our Supreme Court has explained: ""A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects

---

[3] Respondents suggest that the voluntary dismissal was "truly voluntary" because appellants could have proceeded to trial on their remaining claims. However, that fact does not distinguish them from the driver in *Austin*, who also could have continued to litigate his claims despite the adverse ruling.

of the subject." [Citation.] . . .'" [¶] "But the requirement that courts harmonize potentially inconsistent statutes when possible is not a license to redraft the statutes to strike a compromise that the Legislature did not reach." (*Id*. at p. 955.)

Appellants' contention thus requires us to examine the Unruh Act and the DPA, insofar as they address disability discrimination related to service dogs, to determine whether any apparent inconsistencies can be harmonized.[4]

C. *Unruh Act*

The Unruh Act was enacted to "create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167.) The substantive protections against discrimination established by the Unruh Act are set forth in Civil Code section 51. Subdivision (b) of that provision states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business

---

[4]     Our inquiry is governed by established principles. "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.) However, "the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) In addition, "[b]oth the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379,1387.)

6

establishments of every kind whatsoever." Furthermore, subdivision (f) of section 51 incorporates the protections against discrimination created by the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), stating: "A violation of the right of any individual under the [ADA] shall also constitute a violation of this section."

In view of the latter provision, the Unruh Act encompasses the ADA protections for disabled individuals who use service dogs. (*Davis v. Ma* (C.D. Cal. 2012) 848 F.Supp.2d 1105, 1112-1116.) Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. (42 U.S.C § 12182(a).) Under the ADA and its regulations, a public accommodation must make reasonable modifications to its policies, practices, and procedures to permit the use of service dogs by disabled individuals. (*Lentini v. Cal. Ctr. for the Arts* (9th Cir. 2004) 370 F.3d 837, 843-845; 28 C.F.R. §§ 36.104, 36.302(c).) Thus, denying a disabled person access to a public accommodation due to that person's service dog constitutes a potential violation of the ADA. (*Davis v. Ma*, *supra*, 848 F.Supp.2d at p. 1112.)

Civil Code section 52, which provides remedies for violations of section 51, authorizes a damages award of no less than $4,000 and injunctive relief. (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058 (*Turner*); *Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786, 791 (*Molski*).) Subdivision (a) of section 52 states: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to [s]ection 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars . . . , and any attorney's fees that may be determined by the court in addition

thereto, suffered by any person denied the rights provided in [s]ection 51 . . . ." The fee award provision is unilateral, that is, "the plaintiff can recover attorney's fees if he or she prevails, but the defendant cannot." (*Molski*, *supra*, 164 Cal.App.4th at p. 791.) In addition, under subdivision (c) of section 52, "any person aggrieved" by prohibited discrimination may file a request for "preventive relief."[5] (*Id.* at (c)(3).) Thus, a disabled person asserting a violation of section 51 may seek injunctive relief. (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1384 (*Midpeninsula Citizens*).)[6]

### D.  *DPA*

The DPA also establishes protections for disabled persons. (*Munson v. Del Taco. Inc.* (2009) 46 Cal.4th 661, 674 (*Munson*).) The principal substantive protections are set forth in sections 54, 54.1, and 54.2. Pertinent here are sections 54 and 54.2, each of which expressly includes the ADA protections. Subdivision (a) of section 54 sets forth a broad prohibition against discrimination, stating: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks,

---

[5]     Subdivision (c) of section 52 provides in pertinent part:  "Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, . . any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint.  The complaint shall contain the following: [¶] . . . [¶]  (3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to ensure the full enjoyment of the rights described in this section."

[6]     Subdivision (c) of section 52 also expressly authorizes requests for injunctive relief by "the Attorney General, any district attorney or city attorney . . . ."

walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Subdivisions (a) and (b) of section 54.2 guarantee specified rights of access to disabled persons using service dogs, as well as to disabled persons and other individuals engaged in training service dogs.[7] Both section 54 and section 54.2 incorporate the ADA protections that track the analogous incorporation provision of the Unruh Act (§ 51, subd. (f)), stating: "A violation of the right of an individual under the [ADA] also constitutes a violation of this section" (§§ 54, subd. (c), 54.2, subd. (b)).

Under the remedial provisions of the DPA, disabled persons asserting a violation of sections 54, 54.1, or 54.2 may obtain an award of damages -- albeit, with a $1,000 minimum limit, lower than that set forth in the Unruh Act -- and an attorney fee award. Under section 54.3, subdivision (a), anyone who engages in

---

[7] Subdivision (a) of section 54.2 states: "Every individual with a disability has the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in [s]ection 54.1 without being required to pay an extra charge or security deposit for the guide dog, signal dog, or service dog. However, the individual shall be liable for any damage done to the premises or facilities by his or her dog."

Subdivision (b) of section 54.2 states: "Individuals who are blind or otherwise visually impaired and persons licensed to train guide dogs for individuals who are blind or visually impaired . . . and individuals who are deaf or hearing impaired and persons authorized to train signal dogs for individuals who are deaf or hearing impaired, and individuals with a disability and persons who are authorized to train service dogs for the individuals with a disability may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in Section 54.1 without being required to pay an extra charge or security deposit for the guide dog, signal dog, or service dog. However, the person shall be liable for any damage done to the premises or facilities by his or her dog. These persons shall ensure the dog is on a leash and tagged as a guide dog, signal dog, or service dog by an identification tag issued by the county clerk, animal control department, or other agency . . . ."

9

such a violation "is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than *one thousand dollars* . . . , and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in [s]ections 54, 54.1, and 54.2." Like the fee award provision in section 52, the fee award provision here is unilateral, that is, it authorizes awards only to prevailing plaintiffs. (*Turner, supra,* 193 Cal.App.4th at pp. 1058-1060; *Molski, supra,* 164 Cal.App.4th 792.)

Section 54.3 also contains provisions addressing the remedies available under subdivision (a). Subdivision (b) states that such remedies are "nonexclusive and are in addition to any other remedy provided by law . . . ." However, subdivision (c) bars a simultaneous recovery of damages under the Unruh Act and the DPA, stating: "A person may not be held liable for damages pursuant to both this section and [s]ection 52 for the same act or failure to act."

In a separate provision, the DPA authorizes injunctive relief "to correct violations of DPA standards." (*Turner, supra*, 193 Cal.App.4th at p. 1059.) Section 55 provision states: "Any person who is aggrieved *or potentially aggrieved* by a violation of [s]ection 54 or 54.1 . . . may bring an action to enjoin the violation. *The prevailing party in the action* shall be entitled to recover reasonable attorney's fees." (Italics added.) Because section 54 incorporates the ADA protections, a person alleging a violation of those protections may seek injunctive relief under section 55.

The phrases italicized above mark two salient differences between section 55 and section 52, the latter of which provides for injunctive relief under the Unruh Act. Because section 55 permits a person who is "potentially aggrieved" to

10

seek an injunction, "virtually any disabled person can bring an action to compel compliance with the DPA under section 55," without proving that the violation actually denied him or her equal access to some facility. (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 266 (*Urhausen*); see *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1051 (*Jankey*).) In contrast, section 52 affords injunctive relief to "any person aggrieved," but contains no reference to "potentially" aggrieved persons. Furthermore, unlike the fee award provision in section 52, the analogous provision in section 55 is bilateral. Because section 55 authorizes an award to "the" prevailing party, "either party will be entitled to . . . fees if [it] prevail[s]." (*Molski*, *supra*, 164 Cal.App.4th at p. 792.)

### E. *Analysis*

In *Molski*, the appellate court observed that the Unruh Act and the DPA afford disabled persons alternative remedies for discrimination based on architectural barriers to access. (*Molski*, *supra*, 164 Cal.App.4th at pp. 791-792.) In our view, the same is true for disabled persons asserting a denial of access due to the use of a service dog. As explained below, we see no inconsistency between the Unruh Act and the DPA mandating the conclusion that disabled persons alleging such discrimination are limited to asserting claims under the DPA.

To begin, the substantive provisions of the Unruh Act and the DPA regarding disabled persons and the use of service dogs are plainly consistent. Both incorporate the protections established under the ADA, including those applicable to the use of service dogs. As noted above (see pts. B & C, *ante*), the Unruh Act encompasses those protections in section 51, subdivision (f), and the DPA encompasses them in section 54, subdivision (c), and section 54.2, subdivision (b). Furthermore, in section 54.2, the DPA supplements those

11

protections with express rights of access, including rights relating to the training of service dogs. As our Supreme Court has observed, the two statutory schemes "clearly have significant areas of overlapping application, although the Unruh . . . Act . . . applies to many more types of discrimination, while the [DPA] contains unique specific provisions regarding guide, service, and signal dogs (§ 54.2) . . . ." (*Munson*, *supra*, 46 Cal.4th at p. 675.)

Respondents suggest that the protections created by the statutory schemes are inconsistent, arguing that violations of the Unruh Act -- unlike violations of the DPA -- require proof of intentional discrimination. However, no such difference exists between the statutory schemes with respect to disability discrimination based on service dogs. In *Munson*, our Supreme Court concluded that a plaintiff seeking damages for disability discrimination under the Unruh Act need not demonstrate intentional discrimination because the protections against disability discrimination in the Unruh Act encompass the ADA protections, which require no proof of intentional discrimination. (*Munson*, *supra*, 46 Cal.4th at pp. 665-673.)[8]

We therefore turn to the remedial provisions of the Unruh Act and the DPA, which respondents also maintain are irreconcilable. They place special emphasis

---

**8**  *Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, upon which respondents rely, is distinguishable, as it concerned the predecessors of the Unruh Act and the DPA, which did not incorporate a common core of protections against disability discrimination. There, the wheelchair-bound plaintiff sought an award of damages and injunctive relief under the Unruh Act, alleging that he was improperly denied access to a movie theater. (*Marsh v. Edwards, supra,* 64 Cal.App.3d at pp. 884-889.) The appellate court concluded that the plaintiff could assert a claim solely under the DPA because only that statute specifically addressed disability discrimination, and the Unruh Act then contained substantive limitations rendering it "of little aid" to the plaintiff. (*Marsh v. Edwards, supra,* at pp. 889-891.) For the reasons discussed above, those considerations are inapplicable to the current versions of the Unruh Act and the DPA.

on the difference between the minimum damages award of $4,000 specified in the Unruh Act and the minimum damages award of $1,000 specified in the DPA. That difference, they argue, "is obvious, significant, and cannot be harmonized." As explained below, we disagree.

The language of the DPA reflects a legislative intent to permit disabled persons to assert claims under the Unruh Act and the DPA. As noted above (see pt. D., *ante*), subdivision (b) of section 54.3 states that remedies available under section 54.3 are "nonexclusive" and "in addition to any other remedy provided by law . . . ." The sole limitation on recovery is located in subdivision (c) of section 54.3, which states: "A person may not be held liable for damages pursuant to both this section and [s]ection 52 for the same act or failure to act." That provision makes little sense if the Legislature's intent was to bar disabled persons from seeking damages under the Unruh Act. Had the Legislature so intended, it could have simply stated that prohibition. (See *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1226-1227 [observing that if the Legislature had intended to authorize damages awards for "'potentially aggrieved'" persons under section 54.3, it could have done so, in view of the language of section 55].)

Our conclusion finds additional support from the legislative history of the Unruh Act and the DPA. In 1992, the Legislature amended both statutory schemes *simultaneously* to incorporate the ADA protections for disabled persons. (*Munson*, *supra*, 46 Cal.4th at pp. 668-669.) An uncodified section of that legislation stated: "'It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA].'" (Stats.1992, ch. 913, § 1, p. 4282.) In 1992, when the

13

amendments were enacted, the minimum damages award under each law was identical, namely, $250. (*Munson*, *supra*, 46 Cal.4th at p. 674.)

Later, the Legislature repeatedly amended the minimum awards for a variety of reasons, and amended section 54.3 to include subdivision (c), which states the prohibition on a double recovery of damages under the Unruh Act and the DPA. "In 1994, the section 52 minimum was raised to $1,000 and that of section 54.3 to $750 (in a different enactment)." (*Munson*, *supra*, 46 Cal.4th at p. 674, fn. 9.) In 1996, the Legislature increased the section 54.3 award to $1,000 and added the double recovery prohibition. (*Munson*, *supra*, at p. 675, fn. 10.) "In 2001, the Legislature increased the section 52 minimum to $4,000, to increase deterrence against civil rights violations profitable to businesses but causing relatively little individual damage, such as [the] gender discounts forbidden by section 51.6.[9] [Citation.] A bill to again equalize the two minimums by raising that in section 54.3 to $4,000 was passed by the Legislature in 2004, but vetoed by the Governor . . . ." (*Munson*, *supra*, 46 Cal.4th at p. 674, fn. 9.)

The legislative history thus discloses no intent to compel disabled persons to assert discrimination claims relating to service dogs exclusively under the DPA. That intent cannot be attributed to the Legislature in 1992, as it effectively amended the Unruh Act to incorporate the provisions of the ADA and its regulations *authorizing* such claims. Nor do the subsequent amendments betray any intent to repeal or foreclose such claims. Generally, we will not find a repeal

---

[9] Section 51.6 codifies the Gender Tax Repeal Act, which "addresses gender-based price discrimination, providing that '[n]o business establishment of any kind whatsoever may discriminate, with respect to the price charged for services of similar or like kind, against a person because of the person's gender.' (§ 51.6, subd. (b))." (*Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414, 418.)

14

by implication unless there are compelling grounds to do so.[10] No such grounds are present here, as the amendments reflect considerations other than an intent to bar disability discrimination claims under the Unruh Act. Although the minimal awards diverged after 1992, the Legislature equalized them in 1996, when it enacted the prohibition against double recovery. As noted above, that prohibition reflects an intent to permit "service dog" claims under the Unruh Act and the DPA.[11] Later, after increasing the section 52 minimum award for reasons unrelated to the propriety of "service dog" claims, the Legislature attempted unsuccessfully to equalize the minimum awards. We therefore conclude that the disparity between the minimum awards establishes no intent to bar discrimination claims relating to service dogs under the Unruh Act.

Respondents contend the attorney fee provisions relating to injunctive relief are irreconcilable, as the Unruh Act provision is unilateral and the DPA fee provision is bilateral. Those differences, however, can be explained by reference to the pertinent requirements for injunctive relief. As noted above (see pt. D., *ante*), the Unruh Act and the DPA permit "any person aggrieved" to seek

---

**10**    ""'"[A]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.'" [Citation.]"' (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 487, quoting *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-477.)

**11**    Indeed, the legislative history shows that the 1996 amendments presupposed the propriety of disability discrimination claims under the Unruh Act. As our Supreme Court has observed, the Legislature's adjustment to the section 54.3 minimum award in 1996 appears to have been founded on the recognition that an aggrieved party's minimum award should not "'depend upon the statute . . . cite[d] in his or her complaint.'"
*(Fn. continued on next page.)*

15

injunctive relief. (§§ 52, subd. (c)(3), 55.) Furthermore, under the DPA, section 55 also affords injunctive relief to persons "'potentially aggrieved,'" thus permitting "'virtually any disabled person'" to seek such relief. (*Jankey*, *supra,* 55 Cal.4th at p. 1051, quoting *Urhausen*, *supra*, 155 Cal.App.4th at p. 254.) In contrast, section 52 limits injunctive relief to persons who have suffered a violation of their own rights, or confronted a direct threat to those rights. (*Midpeninsula Citizens, supra,* 221 Cal.App.3d at p. 1384 [the term "'person aggrieved'" in section 52 does not encompass plaintiffs whose rights have not been "personally violated"]; see *Scaduto v. Esmailzadeh* (C.D. Cal. 2007) 2007 U.S. Dist. LEXIS 103241, *24 [tenants alleging discrimination by landlord and threatened with eviction, but not yet evicted, were "'persons aggrieved,'" for purposes of the Unruh Act].) The bilateral provision in section 55 thus reflects an apparent legislative intent to discourage potentially meritless requests for injunctive relief, in view of the broad class of persons entitled to make such requests. (See *Turner*, *supra*, 193 Cal.App.4th at p. 1069.) In sum, because there is no irreconcilable inconsistency between the Unruh Act and the DPA, a plaintiff alleging disability discrimination relating to the use of a service dog may assert claims under both statutory schemes, subject to any specific limitations stated in them.[12]

---

(*Munson, supra*, 46 Cal.4th at p. 675, fn. 10, quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1687 (1995-1996 Reg. Sess.) as amended Apr. 25, 1996, p. 3.)

[12]    We note that appellants have requested an award of attorney fees as the prevailing parties on appeal. Because they offer no argument (with citation to appropriate legal authorities) to support that request, we reject it. (See *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal. App.4th 835, 844, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

**DISPOSITION**

The judgment is reversed, and the matter is remanded with directions to vacate the sustaining of the demurrer and grant of summary adjudication regarding appellants' Unruh Act claim, to enter new orders denying the demurrer and motion for summary adjudication, and to conduct further proceedings in accordance with this opinion.  Appellants are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



COLLINS, J.