Filed 12/12/22 Sandoval v. Nippon Life Ins. Co. of America CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| MICHAEL SANDOVAL, | |
| Plaintiff and Appellant, | E077245 |
| v. | (Super.Ct.No. RIC2003903) |
| NIPPON LIFE INSURANCE COMPANY OF AMERICA, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Craig Riemer, Judge. Affirmed.

Apex Trial Law and Ryan M. Ferrell for Plaintiff and Appellant.

Nippon Life Benefits, Justin Wax Jacobs; Hinshaw & Culbertson; Maynard Cooper and Gale and Misty A. Murray for Defendant and Respondent.

1

## I. INTRODUCTION

Plaintiff and appellant, Michael Sandoval, sued defendant and respondent, Nippon Life Insurance Company of America (Nippon), alleging a single cause of action for "violations of the Unruh Civil Rights Act" (Civ. Code, §§ 51, 52)[1] (the UCRA). Sandoval dismissed his complaint, without prejudice, after the parties exchanged written discovery and Nippon sought further responses to its written discovery. Nippon then moved to recover $45,419.50 in attorney fees pursuant to two attorney fee shifting statutes: (1) Civil Code section 55, and (2) section 2000a-3b of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) (the ADA).

Section 55 is part of the Disabled Persons Act (the DPA) (§§ 54-55.3) and is a mandatory, bilateral fee shifting provision (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1045 (*Jankey*)). Section 55 entitles the prevailing party in an action to enjoin a violation of section 54 or 54.1 (provisions of the DPA) to reasonable attorney fees. (*Ibid.*) Under the UCRA, a prevailing defendant may not recover attorney fees. (*Jankey*, at pp. 1044-1045; § 52, subd. (b)(3).) Under the ADA, a prevailing defendant may recover attorney fees only if the ADA claim was frivolous. (See *Jankey*, at p. 1047; 42 U.S.C. § 12205.)

In an April 23, 2021 order, the court awarded Nippon its requested $45,419.50 in attorney fees pursuant section 55. The court did not determine whether Nippon was also entitled to fees under the ADA. Sandoval appeals from the April 23 order, claiming the

---

[1] Undesignated statutory references are to the Civil Code. Although the UCRA is set forth in section 51, remedies for violating section 51 (the UCRA) are set forth in section 52. (*Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937-938.)

fee award must be reversed for two reasons: (1) Nippon is not the prevailing party because the complaint was dismissed without prejudice, and (2) section 55 does not apply because the complaint did not allege a cause of action or seek any relief under the DPA. For its part, Nippon argues that the April 23 order is not appealable, and Nippon was entitled to attorney fees under section 55 *and* the ADA.

We affirm the order awarding Nippon attorney fees under section 55. As we first explain, the order is appealable, and Nippon is the prevailing party in this action for purposes of recovering its costs of suit, including attorney fees authorized by statute. (Code Civ. Proc., §§ 1032, subd. (a)(4), 1033.5.) Second, Nippon was entitled to recover reasonable attorney fees under section 55. The complaint alleged a single cause of action under the UCRA, but it did not limit its request for injunctive relief to injunctive relief under the UCRA. (§ 52, subd. (a).) Instead, it sought a form of injunctive relief that is only available under section 55 and that is not available under the UCRA. (*Ibid*.)[2] Thus, the fee award was authorized under section 55.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. *Nippon's Website*

Nippon is an insurance company incorporated in the State of Iowa, and its principal place of business is in New York, New York. Nippon's only form of business is "the sale of employer based (ERISA) group insurance policies for medical, dental,

_____

[2] In addition to its $45,419.50 in attorney fees, Nippon was awarded $1,450.99 in costs pursuant to Nippon's unopposed memorandum of costs. (Cal. Rules of Court, rule 3.1700(a).) Sandoval did not move to tax these costs and does not challenge the $1,450.99 cost award in this appeal.

3

vision, disability and life products." Nippon does not sell individual insurance policies, nor does it sell group insurance policies "directly to individuals." It only sells group insurance policies to employers, usually through brokers or general agents. Individuals are ineligible to be " ' members' " of any Nippon-issued policy unless they are "part of an employer offered insurance group."

Nippon has been licensed to sell its group insurance policies in 47 states and the District of Columbia. Nippon does business in California and owns and maintains a website that is available in California, but Nippon does not sell insurance products or services on its website. Nippon also has no "brick and mortar" locations that are open or accessible to the public.

B. *The Complaint*

The complaint alleges Sandoval is completely blind and uses a screen reader to access the internet and its content. In early 2020, Sandoval visited Nippon's website but was denied access "due to numerus barriers" in the website that "negated the use of a screen reader." The website did not comply with "nearly universally accepted" "Web Content Accessibility Guidelines" known as " 'WCAG 2.0.' " The website was a " 'public accommodation' " within the meaning of the ADA (42 U.S.C. §12181(7)) and a " 'business establishment' " within the meaning of the UCRA (Civ. Code, § 51, subd. (b)). The website's inaccessibility to blind persons violated Title III of the ADA, which prohibits discrimination against disabled individuals in places of public accommodation (42 U.S.C. § 12182(a)), and the UCRA, which decrees that any violation

4

of any right of any disabled individual under the ADA is also a violation of the UCRA (Civ. Code, § 51, subd. (f)).

Based on these allegations, the complaint alleged a single cause of action for "violations" of the UCRA. The complaint more specifically alleged that Nippon's actions in creating the inaccessible website constituted "intentional discrimination" for purposes of the UCRA *and* an ADA violation, which "also equates to" a UCRA violation.[3] The complaint expressly alleged "[p]ursuant to the Unruh Civil Rights Act" that Sandoval was entitled to injunctive relief requiring Nippon to "remove the barriers" on its website "in order to provide full and equal access to Plaintiff and other blind consumers." The complaint claimed Sandoval was entitled to statutory damages "for each discriminatory event," "[p]ursuant to Civil Code § 52."

In its prayer for relief, the complaint sought: (1) a judgment that Nippon violated Sandoval's rights pursuant to the UCRA; (2) a preliminary and permanent injunction requiring Nippon to "take the steps necessary to make its website readily accessible to and usable by blind consumers" without specifying a statutory basis for this requested relief, (3) statutory damages of $4,000 per violation "pursuant to section 52(a)," and (4) attorney fees "pursuant to all applicable laws including, without limitation . . . [section] 52(a)." The complaint limited Sandoval's total recovery to $74,999, inclusive of damages, attorney fees and costs, and injunctive relief costs. The complaint did not

---

[3] "A plaintiff can recover under the [Unruh Act] on two alternative theories: (1) a violation of the ADA (Civ. Code, § 51, subd. (f)); or (2) denial of access to a business establishment based on intentional discrimination." (*Martinez v. San Diego County Credit Union* (2020) 50 Cal.App.5th 1048, 1059.)

allege a cause of action under the ADA or the DPA, and it did not mention the DPA or any statutes comprising the DPA. (§§ 54-55.3.)

C. *The Dismissal of the Complaint*

Nippon answered the complaint, and the parties exchanged written discovery. After Nippon asked Sandoval to provide further responses to Nippon's written discovery, Sandoval voluntarily dismissed the complaint and, thus, the entire action, without prejudice.

D. *Nippon's Motion for Attorney Fees and the Court's Ruling on the Motion*

Following the dismissal, Nippon filed a motion for $45,419.50 in attorney fees, claiming that, as the prevailing party in the action (Code Civ. Proc., §§ 1032, subd. (a)(4), 1033.5), it was entitled to reasonable attorney fees pursuant to Civil Code section 55 and the ADA (42 U.S.C. § 2000a-3b). Nippon submitted evidence that, before, after, and at the time Sandoval allegedly accessed the website, the website complied with "the WCAG 2.0 Level AA standards," "and such compliance was easily apparent and discernable to both visually impaired and non-impaired visitors alike."

In opposition, Sandoval argued that section 55 did not apply because his complaint only alleged a cause of action and only sought relief pursuant to the UCRA, not the DPA or the ADA. Sandoval relied on *Jankey*, *supra*, 55 Cal.4th 1038 for the proposition that a plaintiff alleging an ADA violation that also constitutes a violation of the UCRA and the DPA is "the master" of the plaintiff's complaint and may pick and choose or elect whether to invoke the rights and remedies available under any one, two, or all three of the federal and state statutes.

In an April 23, 2021 order, the court granted the motion for attorney fees. The court explained that, although the complaint did not expressly seek to enjoin a violation of Civil Code section 54 or 54.1, the complaint, "in substance if not in form," alleged "acts or omissions that constitute violations" of "every statute that is violated by a violation of the ADA." The court disagreed with Sandoval's argument that a plaintiff can avoid the operation of section 55 merely by not expressly alleging a violation of section 54 or 54.1 in the complaint, when, as here, the facts alleged in the complaint constitute a violation of section 54 or 54.1 (the DPA), as well as a violation of section 51 (the UCRA). Thus, the court ruled that Nippon, as the prevailing party, was entitled to attorney fees under section 55.[4] The court did not determine whether Nippon was entitled to fees under the ADA. Sandoval timely appealed from the April 23, 2021 order.

## III. DISCUSSION

A. *The April 23, 2021 Order Is an Appealable Judgment*

We first consider Nippon's claim that we lack jurisdiction to consider this appeal, and this appeal must therefore be dismissed, because the April 23, 2021 order awarding Nippon $45,410.50 in attorney fees is not appealable. We disagree. The April 23 order is an appealable judgment: it is not interlocutory; it finally determined the right of the parties in this action. (Code Civ. Proc., §§ 577, 904.1, subd (a)(1).)

In California, the right to an appeal is conferred "exclusively by statute"; thus, an appellate court lacks jurisdiction to consider an appeal unless a statute authorizes the

---

[4] Sandoval did not dispute the reasonableness of Nippon's $45,419.50 in requested attorney fees; thus, the court awarded Nippon the entire amount.

appeal. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1083.) Code of Civil Procedure section 904.1 is the "primary statute" addressing the appealability of judgments and orders in civil actions. (*Ibid.*) It "serves to avoid piecemeal litigation by limiting appeals to final judgments, postjudgment orders, and certain enumerated orders." (*Ibid.*)

Code of Civil Procedure section 904.1, subdivision (a)(1), authorizes an appeal to be taken from a judgment, subject to exceptions that are inapplicable here. "A judgment is the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.) A postjudgment order is "an order made after a judgment made appealable" by section 904.1, subdivision (a)(1). (Code Civ. Proc., § 904.1, subd. (a)(2).)

As the parties agree, the April 23, 2021 order is not an appealable postjudgment order because it was not made following an appealable judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).) As the parties also agree, the clerk's entry of Sandoval's voluntary dismissal of his complaint without prejudice (Code Civ. Proc., § 581, subd. (b)(1))—which preceded the April 23 order—is not an appealable judgment. (*Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 354 (*Gassner*).) But under this court's 2018 decision in *Gassner*, the April 23 order is an appealable judgment. (*Id.*, at p. 355.) In *Gassner*, this court, after acknowledging a split of authority on the question, concluded that a costs order entered following a voluntary dismissal of an action without prejudice is an appealable judgment. (*Ibid.*) *Gassner* reasoned that such orders are not interlocutory and "cannot be reviewed in an appeal from some subsequent final judgment. There is a need for some kind of review, but there is no need for the speedy and often summary review that a writ petition entails." (*Ibid.*)

8

*Gassner*'s reasoning is sound, and we follow it here. Under *Gassner*, the April 23, 2021 order awarding Nippon $45,419.50 in attorney fees as an item of costs (Code Civ. Proc., §§ 1032, 1033.5) is an appealable judgment (*Gassner*, *supra*, 30 Cal.App.5th at p. 355).

B. *Nippon Is the Prevailing Party in This Action for Purposes of Recovering Its Costs, Including Attorney Fees Authorized by Statute (Code Civ. Proc.*, §§ *1032*, *1033.5)*

We next address Sandoval's claim that Nippon is not the "prevailing party" in this action for purposes of recovering its costs, including attorney fees authorized by statute. (Code Civ. Proc., §§ 1032, 1033.5.) Sandoval points out that Black's Law Dictionary has defined " 'prevailing party' " as a person in whose favor a judgment was entered (Black's Law Dict. (11th ed. 2019); see *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 569) and argues that no "judgment" was entered in Nippon's favor.

A prevailing party in an action or proceeding is entitled to recover its costs as "as a matter of right," "[e]xcept as otherwise expressly provided by statute." (Code Civ. Proc., § 1032, subd. (b).) For these purposes, a prevailing party includes "a defendant in whose favor a dismissal is entered . . . ." (*Id*. at subd. (a)(4).) Nippon is a defendant in whose favor a dismissal was entered. For this reason, and because no statute provides otherwise, Nippon is the prevailing party in this action for purposes of recovering its costs. (*Id*. at subd. (b).) Attorney fees are recoverable as an item of costs (*ibid.*), if, for example, a statute authorizes their recovery (§ 1033.5, subd. (a)(10)(B)). The central question in this case is whether Civil Code section 55 authorized the court to award

9

Nippon attorney fees as an item of costs. (§§ 1032, subd. (b), 1033.5, subd. (a)(10)(B).) We turn to this question.

C. *Sandoval's Complaint Alleged a Single Cause of Action Pursuant to the UCRA, But It Did Not Limit Its Claim for Injunctive Relief to Injunctive Relief That is Available Under the UCRA. Instead, It Sought Injunctive Relief That is Only Available Under Section 55. Thus, Nippon's Attorney Fee Award Was Authorized Under Section 55*

Sandoval claims the court erroneously concluded that section 55 applied, and that Nippon was entitled to fees under section 55, "simply" because Sandoval *could have* pled a DPA cause of action based on the ADA violation he relied on to support his UCRA cause of action. Sandoval argues: the UCRA and DPA "may overlap but are recognized as completely separate causes of action"; a plaintiff may plead a UCRA cause of action and invoke UCRA remedies to the exclusion of a DPA cause of action and DPA remedies; the complaint "is crystal clear that it only pleads a single cause of action" under the UCRA; and the UCRA does not allow defendants to recover attorney fees "regardless of the outcome."

### 1. Standard of Review

Generally, a trial court's determination of whether a party is entitled to an attorney fee award is reviewed for abuse of discretion. (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1056 (*Turner*).) "[D]iscretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied." (*Flannery v. California Highway Patrol* (1988)

10

61 Cal.App.4th 629, 634.) But the judgment or order forming the basis of the appeal is presumed to be correct, and if it is correct on any theory, it must be affirmed regardless of the trial court's reasoning. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) "If the decision itself is correct, there can be no prejudicial error from incorrect logic or reasoning." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201.)

2. Statutory Overview

"The ADA prohibits discrimination on the basis of disability in the enjoyment of public accommodations, including with respect to access. (42 U.S.C. § 12182.) Businesses must ' "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." ' (*Munson v. Del Taco, Inc.* [(2009) 46 Cal.4th 661, 669], quoting 42 U.S.C. § 12182(b)(2)(A)(iv).) Liability does not depend on proof of intentional discrimination, but a private litigant cannot obtain damages for the denial of access, only injunctive relief." (*Jankey*, *supra*, 55 Cal.4th at p. 1044; 42 U.S.C. § 12188(a).)

The ADA includes a bilateral attorney fee provision that allows the prevailing party in an ADA action to recover reasonable attorney fees. (42 U.S.C. § 12205.) But under established precedent, a prevailing defendant can only recover attorney fees if the ADA claim was frivolous. (*Jankey*, *supra*, 55 Cal.4th at p. 1047-1048; 42 U.S.C. § 12205; *Christianburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 416-417 (*Christianburg*).) That is, "prevailing defendants may receive fees only when the trial

11

court finds that a plaintiff's claim is 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so . . . .' " (*Jankey*, at p. 1048.)

"In 1992, shortly after passage of the ADA, the Legislature amended the state's disability protections ' "to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." ' [Citation.] Two overlapping laws, the Unruh Civil Rights Act (§ 51) and the Disabled Persons Act (§§ 54–55.3), are the principal sources of state disability access protection." (*Jankey*, *supra*, 55 Cal.4th at p. 1044.)

The UCRA "broadly outlaws arbitrary discrimination in public accommodations and includes disability as one among many prohibited bases. (§ 51, subd. (b).) As part of the 1992 reformation of state disability law, the Legislature amended the UCRA to incorporate by reference the ADA, making violations of the ADA per se violations of the [UCRA]." (*Jankey*, *supra*, 55 Cal.4th at p. 1044; § 51, subd. (f).) "This amendment was intended to extend to disabled individuals aggrieved by an ADA violation the full panoply of [UCRA] remedies." (*Jankey*, at p. 1044.)

The UCRA is set forth in section 51 (§51, subd. (a)), but section 52 provides remedies for section 51 violations (*Flowers v. Prasad*, *supra*, 238 Cal.App.4th at pp. 937-938). These remedies include "injunctive relief, actual damages (and in some cases as much as treble damages), and a minimum statutory award of $ 4,000 per violation. (§ 52, subds. (a), (c)(3) . . . .)" (*Jankey*, *supra*, 55 Cal.4th at p. 1044.) The UCRA's attorney fee provision is unilateral, that is, "the plaintiff can recover attorney fees if he or she prevails,

12

but the defendant cannot." (*Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786, 791 (*Molski*); see § 52, subd. (a).)

The DPA "substantially overlaps with and complements" the UCRA. (*Jankey*, *supra*, 55 Cal.4th at p. 1044.) The DPA is "[m]ore narrow in focus" than the UCRA, and it "generally guarantees people with disabilities equal rights of access 'to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation.' " (*Ibid*; see §§ 54, subd. (a), 54.1, subd. (a)(1).) ADA violations are a basis for relief under the DPA (*Jankey*, at p. 1044; §§ 54, subd. (c), 54.1, subd. (d)), as they are under the UCRA (§ 51, subd. (f)).

Available remedies under the DPA include actual damages (and in some cases as much as treble damages), with a $ 1,000 minimum recovery, and attorney fees. (§ 54.3, subd. (a); *Jankey*, *supra*, 55 Cal.4th at p. 1044.) "Recognizing the overlap between" the UCRA and the DPA's damages provisions, "the Legislature expressly foreclosed double recovery" for damages under both acts. (*Jankey*, at pp. 1044-1045; § 54.3, subd. (c); *Munson v. Del Taco*, *Inc.*, *supra*, 46 Cal.4th at p. 675.) It is important to note here, however, that injunctive relief under section 55 "is available as a cumulative remedy" to injunctive relief under the UCRA (§52, subd. (c) (3)) and the DPA (§ 54.3, subd. (c)). (*Molski*, *supra*, 164 Cal.App.4th at p. 792.)

Section 55 is part of the DPA, but it is "broader in two respects than the private right of action" authorized by section 54.3: (1) it "extends standing to those 'potentially aggrieved,' not just those who have been actually denied access," and (2) injunctive relief under section 55 may be predicated on *potential violations*, not only of sections

13

54 and 54.1, but of various provisions of the Government Code and Health and Safety Code. (*Jankey*, *supra*, 55 Cal.4th at p. 1045.) Section 55 "marks a clear departure" from the UCRA and the ADA by requiring fee awards to prevailing defendants in actions for violating section 54 or 54.1. (*Id.*, at p. 1047.)

As relevant here, section 55 provides: "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code . . . may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees." (§ 55.) As its language indicates, fee awards to the prevailing party are mandatory under section 55. (*Jankey*, *supra*, 55 Cal.4th at p. 1046.)

3. Analysis

Relying on *Jankey*, Sandoval argues that a plaintiff alleging a disability access cause of action that violates the ADA, UCRA, and DPA may allege causes of action and seek relief under only one of these statutes, two of them, or all three. We agree. (*Jankey*, *supra*, 55 Cal.4th at pp. 1049-1055; *Molski*, *supra*, 164 Cal.App.4th at p. 792.) We explain *Jankey's* reasoning in order to illuminate how Sandoval's complaint could and did leave the door open for Sandoval to obtain injunctive relief under section 55, even though the complaint only alleged a cause of action under the UCRA.

*Jankey* held that the ADA's attorney fee provision (42 U.S.C. §12205) does not preempt section 55. (*Jankey*, *supra*, 55 Cal.4th at p. 1047-1055, disagreeing with *Hubbard v. SoBreck*, *LLC* (9th Cir. 2009) 554 F.3d 742, 745.) In discussing preemption, *Jankey* reasoned that Congress did not intend the ADA to preempt state laws that, at least

in some respects, afforded greater protection for plaintiffs than the ADA, even if the state laws were less advantageous to plaintiffs in other respects. (*Jankey*, at pp. 1047-1052.)

Section 55 is such a law (*Jankey*, *supra*, 55 Cal.4th at p. 1051), and regarding such laws, *Jankey* noted, "the ADA as a whole should be read to preserve individuals' rights to decide whether to sue under the state law as well, or instead" of suing under the ADA (*id.* at p. 1050). *Jankey* noted: "Plaintiffs can always sue under the ADA alone, safe in the knowledge that even if they lose, defense fees will be available only in accordance with *Christianburg* [the action was frivolous]. Alternatively, they can add one or more state law remedies if they view the potential benefits as superior to the potential burdens. If instead the risks appear to exceed the potential rewards, they can omit a given state law claim, at no loss to enforcement of their ADA rights." (*Id.* at p. 1055.) Thus, a plaintiff "might choose to sue under section 55, in addition to or instead of the ADA" given section 55's "lower standing hurdle." (*Id.* at pp. 1051.)

"Such a regime" that allows plaintiffs to pick and choose among available federal and state law remedies "is fully consistent with Congress's apparent willingness to allow plaintiffs to freely determine what remedies they pursue. [Citation.] Congress's concern about not discouraging would-be plaintiffs from availing themselves of the ADA thus offers no reason to preclude states from established different fee award regimes for independently establishing state law remedies." (*Jankey*, *supra*, 55 Cal.4th at p. 1055.)

As Sandoval argues, his complaint alleged a single cause of action for UCRA violations, and it did not mention the DPA or any DPA provisions, including section 55. It only alleged that Nippon's inaccessible website violated the ADA and the UCRA. But

15

contrary to Sandoval's argument, the complaint did not limit its request for injunctive relief to injunctive relief under the UCRA. (§ 52, subd.(c)(3).)

The complaint alleged: "Pursuant to the Unruh Civil Rights Act, plaintiff is entitled to injunctive relief requiring that defendant remove the barriers on defendant's website in order to provide full and equal access to plaintiff and other blind consumers." (Capitalizations omitted.) But in its prayer for relief, the complaint sought "a preliminary and permanent injunction" without specifying the statutory basis for the requested injunction and without limiting its request for the injunctive relief available under the UCRA. (§ 52, subd. (c)(3).)

In other respects, the complaint was more specific in its prayer for relief. It sought statutory damages and attorney fees solely under the UCRA, and it limited Sandoval's total recovery to $74,999. In contrast to these limitations, the complaint did not limit its request for injunctive relief to injunctive relief available under the UCRA. Instead, the language of the complaint allowed Sandoval to seek and obtain injunctive relief under section 55, ultimately by arguing that the alleged ADA violation, Nippon's inaccessible website, violated sections 54 or 54.1, as well as section 51.

Seeking injunctive relief under section 55 is entirely consistent with alleging a single cause of action for UCRA violations and seeking damages and attorney fees solely under the UCRA. Although a plaintiff must elect between recovering *damages* under the UCRA or the DPA (§ 54.3, subd. (c)), injunctive relief under section 55 "is available as a cumulative remedy" to injunctive relief under the UCRA (§ 52, subd. (c)(3)) and the DPA (§ 54.3, subd. (b); *Molski*, *supra*, 164 Cal.App.4th at p. 792).

16

Further, by seeking "injunctive relief mandating that [Nippon] comply with its accessibility obligations towar[d] the disabled," the complaint sought to restrain *potential violations* of section 54 or 54.1 affecting *potentially aggrieved* persons. (§ 55.) The complaint expressly sought injunctive relief for plaintiff "and other blind consumers." This injunctive relief necessarily includes injunctive relief for potential violations of section 54 or 54.1 affecting potentially aggrieved persons. (*Ibid*.) This injunctive relief is available under section 55 (*Jankey*, *supra*, 55 Cal.4th at p. 1045), but it is not available under the UCRA (§ 52, subd. (c)(3)). Under the UCRA, only a person whose rights have been " 'personally violated' " may seek injunctive relief. (*Flowers v. Prasad*, *supra*, 238 Cal.App.4th at pp. 943-944.) Thus, section 55 applied, and Nippon was properly awarded attorney fees under section 55.

## IV.  DISPOSITION

The April 23, 2021 order and judgment awarding Nippon $45,419.50 in attorney fees is affirmed.  Nippon shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


MILLER
Acting P.J.


MENETREZ
J.