Filed 7/22/20; Certified for Publication 8/6/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GOLDEN STATE SEAFOOD, INC., | B295937 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC707628) |
| v. | |
| JAMIE R. SCHLOSS, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

Jamie R. Schloss, in pro. per.; Turner Law Firm, Keith J. Turner and Justin Escano for Defendant and Appellant.

Law Offices of Collin Seals and Collin Seals; Charles L. Murray III for Plaintiff and Respondent Golden State Seafood, Inc.

———————————

# INTRODUCTION

Golden State Seafood filed an action for malicious prosecution and unfair business competition against William Cohen (Cohen) and his attorney appellant Jamie R. Schloss (Schloss). The complaint alleged Schloss filed a prior lawsuit against Golden State Seafood on behalf of his client Cohen, knowing he lacked probable cause to bring the action. Golden State Seafood also alleged Schloss maliciously refused to dismiss the prior action and engaged in unfair business practices.

Schloss filed an anti-SLAPP motion. The trial court denied the motion because Golden State Seafood demonstrated a likelihood of success on the merits of its claims, thereby satisfying the second prong of the anti-SLAPP test. Schloss filed a motion for reconsideration. That motion was also denied.

Schloss now appeals the orders denying his two motions. We affirm both orders.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Relevant Factual Background*

Golden States Seafood (GSS) is a wholesale seafood distributor based in downtown Los Angeles. On August 19, 2015, GSS was making a delivery to Bellaj Banquet Hall (Bellaj) in Burbank. While making the delivery, the GSS truck driver parked in a space reserved for drivers with valid handicap placards on display. At that point, William Cohen parked his car and confronted the GSS driver for parking improperly. He "pulled out a camera and began taking photographs" while the GSS driver apologized and moved the delivery truck.

Cohen contacted GSS, demanding personal financial compensation because its driver had improperly parked in the handicap parking spot.  GSS did not offer compensation.

Cohen, represented by attorney Schloss, then filed a lawsuit against GSS, alleging violations of:  1) the Unruh Act (Civ. Code, § 51 et seq.) premised upon a violation of the Americans with Disabilities Act of 1990 (ADA); and 2) the California Disabled Persons Act (DPA) (Civ. Code, § 54 et seq.).

On May 23, 2017, when trial by jury commenced, Cohen's evidence unfolded in an unexpected way.  In his complaint, Cohen had initially alleged a denial of access to goods and services at Bellaj.  His complaint read:  "On Wednesday August 19, 2015 at approximately 3:30 p.m., William Cohen was trying to eat at the Bellaj Banquet Hall . . . but was prevented from doing so because he could not park in the handicapped parking space." However, at trial, Cohen testified he was actually seeking and was denied access to the 7-11 convenience store located adjacent to the Bellaj because he needed to get a drink as he felt dehydrated.  Similarly, Schloss represented to the jury that Cohen was denied access to the nearby 7-11 store, as opposed to Bellaj.

Also unusual was that Cohen presented no documentary evidence at trial that he had a valid handicap placard at the time of the incident at Bellaj, a placard he needed to display to park legally in the space blocked by the GSS driver.  (The record on appeal does not include a complete transcript of Cohen's oral testimony; all we have is Schloss's post-trial declaration that Cohen testified he had been issued a valid placard, but had lost the receipt showing when it went into effect.)  Thus, at trial, Cohen proved, at most, that the GSS driver committed a parking

3

violation when he parked his truck in a space reserved for vehicles displaying handicap placards. For its part and in response to the allegations in the operative complaint, GSS presented evidence that Bellaj was not open for business on the day in question, casting doubt on Cohen's story as pled in the complaint. On May 24, 2017, the jury returned a verdict in favor of GSS. The jury found Cohen was not disabled at the time of the alleged incident.

B.    *GSS's Subsequent Civil Complaint*

One year later, on May 24, 2018, GSS filed a civil complaint against Cohen and Schloss, seeking damages, injunctive relief, and attorney fees and costs. The complaint alleged three causes of action: 1) wrongful use of civil proceedings (against Cohen alone); 2) malicious prosecution (against Cohen and Schloss); and 3) violation of Business and Professions Code section 17200 et seq. (against Schloss alone).

We do not discuss the first cause of action filed solely against Cohen because he is not a party to this appeal. As to the second cause of action for malicious prosecution, GSS alleged Cohen and Schloss (collectively defendants) knowingly filed a "meritless and malicious lawsuit" that was based on "fabricated facts and a non-cognizable legal theory."

The GSS complaint alleged no reasonable attorney would have filed the parking case, but Schloss did so knowing he could not prove GSS had violated the Unruh Act or the DPA. GSS alleged defendants' parking case had "absolutely no merit" in that 1) defendants both knew there is no private right to enforce parking violations; 2) defendants did not have standing to privately prosecute a motor vehicle violation; 3) the facility Cohen visited was owned and operated by Bellaj, not GSS; 4) Bellaj was

4

not open for business at the time of the incident; 5) GSS did not operate or own any facility that denied access to Cohen; and 6) Cohen was neither disabled nor handicapped on the date of the incident.

The complaint further alleged defendants continued to proceed with litigation "despite being informed of the reasons why no reasonable attorney would bring such allegations on the alleged facts" and after the trial court denied their ADA claims. GSS alleged defendants "perpetrated this precise scheme on at least one other occasion in an attempt to extort money from another company making a delivery. Considering [Cohen]'s own testimony that he has filed approximately twenty (20) ADA cases, (where he is often represented by [Schloss]), . . . [Cohen] in essence makes income prosecuting ADA cases."[1]

GSS alleged Cohen and Schloss, for the first time at trial, claimed Cohen was trying to access the 7-11 rather than Bellaj. "By changing the allegation at such a late date, . . . [Cohen] and [Schloss] knew that [Cohen] was never actually denied access to either [Bellaj] (which was not open), or 7-11 (which he could have freely entered)."

The third cause of action alleged Schloss engaged in unfair competition in violation of Business and Professions Code section 17200 et seq., in that Schloss, a licensed attorney, has earned

---

[1] The complaint refers to Los Angeles Superior Court case No. BC631960, filed by defendants against Carole & Jan's Moving Company. It alleges the complaint defendants filed against GSS included language "leftover" from defendants' case against Carole & Jan's Moving Company. According to GSS, the alleged facts are "nearly identical," involving a delivery truck parked in a handicap parking space.

5

income in the past several years by filing nearly 20 ADA lawsuits. He and Cohen have a contractual relationship where Schloss is retained to prosecute "meritless legal lawsuits" based on alleged ADA and Unruh Act violations against persons and entities for improperly parking in handicap spaces. GSS sought attorney fees and injunctive relief to enjoin defendants from further engaging in such litigation.

C.     *Special Motion to Strike the Complaint*

Schloss entered a general denial, and on August 30, 2018, filed a special motion to strike GSS's complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[2]

On October 16, 2018, the trial court issued an order denying Schloss's special motion to strike in its entirety. In doing so, the trial court issued an extensive ruling discussing the many bases upon which it found GSS would likely be successful in prevailing on the merits of both claims.

D.  *Motion for Reconsideration*

Ten days later, on October 26, 2018, Schloss filed a motion requesting the court to reconsider its denial of his anti-SLAPP motion because of new evidence—namely, a record from the Department of Motor Vehicles (DMV) showing Cohen was issued a disabled parking placard prior to the August 19, 2015 incident. He contends Cohen's causes of action were thus factually and

---

[2]     All further undesignated statutory references are to the Code of Civil Procedure, unless otherwise indicated.

6

legally viable, and GSS had not shown any evidence of malice or credible evidence establishing a lack of probable cause.

At the hearing on the motion for reconsideration, the trial court found Schloss did "not present new facts, circumstances or law to warrant reconsideration of the denial of the anti-SLAPP motion, as required by CCP § 1008(a)." The DMV record (purportedly indicating Cohen had a valid handicap placard at the time of the incident) "was available when the anti-SLAPP motion was heard, notwithstanding Schloss' assertion that it took 5 hours to obtain the Registration Information Request form and that it was not worth the time and expense to obtain this document for the trial" in Cohen's initial lawsuit against GSS.

The court denied Schloss's motion for reconsideration. In doing so, the trial court expressly allowed GSS "to file a motion for sanctions pursuant to CCP § 1008(d)."

On February 22, 2019, Schloss filed a notice of appeal from the trial court's denial of the anti-SLAPP motion and denial of the motion for reconsideration.

## DISCUSSION

A. *Applicable Law*

Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " is defined in section 425.16 to

7

include, in relevant part: "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e).)

The Legislature enacted section 425.16 to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Thus, the purpose of the anti-SLAPP law is "not [to] insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

When a party moves to strike a cause of action under the anti-SLAPP law, a trial court evaluates the special motion to strike using a two-prong test: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056); and, if so, (2) has the non-moving party demonstrated that the challenged cause of action has " 'minimal merit' " by making "a prima facie factual showing sufficient to sustain" a judgment in its favor? (*Baral, supra,* 1 Cal.5th at pp. 384–385; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93–94; see also § 425.16, subd. (b)(1)). After the first prong is satisfied by the moving party, the burden shifts to the non-moving party to "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral,* at p. 396.) If the plaintiff

8

can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be stricken. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

B.  *Standard of Review*

We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.)

We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) Where a complaint identifies a number of acts of alleged misconduct and theories of recovery, for purposes of reviewing an anti-SLAPP motion, it is sufficient to focus on just one. (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 821.)

C.  *Prong 1*: *Arising from Protected Activity*

Schloss's initial burden is to show that the two causes of action in GSS's complaint against Schloss arise from protected activity. (*Park*, *supra*, 2 Cal.5th at p. 1061.)

9

GSS's malicious prosecution and unfair business competition (Bus. & Prof. Code, § 17200 et seq.) causes of action are based on conduct that is protected activity—i.e., the filing of complaints against GSS and others for alleged violations of the Unruh Act, DPA, and ADA.  This is protected activity.  (See *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [" '[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action' "]; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 766 (*Colton*) [same]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–736 [complaint for malicious prosecution arises out of act in furtherance of right of free speech or petition under section 425.16].)

D.    *Prong 2: Probability of Prevailing on the Merits*

The second prong of the anti-SLAPP analysis requires GSS to show a probability of prevailing on its causes of action.  We reiterate the court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  The court accepts plaintiff's evidence as true and evaluates defendant's showing only to determine if it defeats plaintiff's claim as a matter of law.  (*Baral*, *supra*, 1 Cal.5th at p. 384–385; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (Wilson).)

1. Analysis:  Malicious Prosecution

To prevail on a malicious prosecution claim, plaintiff must show the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and

10

(3) was initiated with malice. (*Soukup, supra*, 39 Cal.4th at p. 292.) "[A]n attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*).)

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' [Citation.] 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation] 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.' " (*Soukup, supra*, 39 Cal.4th at p. 292.) Thus, " 'probable cause is lacking "when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial." ' " (*Morrison v. Rudolph* (2002) 103 Cal.App.4th 506, 512, overruled in part on other grounds in *Zamos, supra*, 32 Cal.4th at p. 973.)

The court must " ' "make an objective determination of the 'reasonableness' of [defendant's] conduct, i.e., to determine whether, on the basis of the facts known to [defendant], the institution [and prosecution] of the [lawsuit] was legally tenable." ' " (*Zamos, supra*, 32 Cal.4th at p. 971.) " 'The test applied to determine whether a claim is tenable is "whether any reasonable attorney would have thought the claim tenable." ' " (*Ibid.*)

"The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." (*Sheldon Appel*

11

*Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874.) "As an element of malicious prosecution, malice 'reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement.' " (*Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 466–467.) "Malice ' "may range anywhere from open hostility to indifference" '; it is not limited to ' "ill will toward plaintiff but exists when the proceedings are [prosecuted] primarily for an improper purpose." ' " (*Id.* at p. 466.) " 'Malice may also be inferred from the facts establishing lack of probable cause' " (*Soukup, supra*, 39 Cal.4th at p. 292), and lack of probable cause is a factor in considering whether the claim was prosecuted with malice. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.) "Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*Ibid.*)

GSS has met the first element of its malicious prosecution claim, as Schloss prosecuted Cohen's action against GSS which concluded in a judgment in GSS's favor.

As to the second element of probable cause, we find sufficient evidence in the record that Schloss prosecuted, or at the very least, continued to prosecute, Cohen's lawsuit against GSS knowing he lacked probable cause. This requires us to examine what Cohen had to prove under the Unruh Act and DPA.

The Unruh Civil Rights Act, Civil Code sections 51 through 52, was enacted to "create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious

12

discrimination by such establishments." (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167.) Civil Code section 51, subdivision (f) incorporates the protections against discrimination created by the Americans with Disability Act of 1990 (42 U.S.C. § 12101 et seq.) (ADA). It states: " 'A violation of the right of any individual under the [federal ADA] shall also constitute a violation of this section.' " (*Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937.) The ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." (42 U.S.C. § 12182(a).) The ADA defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities privileges, advantages or accommodations." (42 U.S.C. § 12182(b)(2)(A)(ii); *Baughman v. Walt Disney World Co.* (2013) 217 Cal.App.4th 1438, 1446.) As our Supreme Court has held, there "is no indication that the Legislature intended to broaden the scope of [Civil Code] section 51 to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers." (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 500.) This is in accord with the actual language of the ADA which prohibits

discrimination by any person who "operates a place of public accommodation."  (42 U.S.C. § 12182(a).)

The California Disabled Persons Act (Civ. Code, § 54 et seq.) (DPA) "substantially overlaps with and complements the Unruh Civil Rights Act." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044.)  The DPA guarantees people with disabilities equal rights of access "to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 674, fn. 8.)  The DPA incorporates the ADA, in that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section." (Civ. Code, § 54, subd. (c).)  Thus, an individual who is "denied equal access" to a public place/facility/building, may bring a cause of action under the DPA/ADA.  "The phrase 'denied equal access' necessarily implies that either the structure of the public facility, or some policy of its operator, precluded equal access." (*Urhausen v. Long Drugs Stores California, Inc.* (2007) 155 Cal.App.4th 254, 263.)

Here, GSS was a wholesale seafood distributor.  It did not own or operate the Bellaj, the 7-11 convenience store, or any business near the parking spot reserved for vehicles with handicap placards.  At best, its driver committed a Vehicle Code violation by blocking the reserved space.  This is not the type of discrimination the Unruh Act, DPA, or ADA was intended to remedy.  (See 28 C.F.R. § 36.101(a) [The purpose of the ADA is to prevent "discrimination on the basis of disability by covered public accommodations and requires [said] places . . .to be designed, constructed, and altered in compliance with accessibility standards"].)  As the trial court found, GSS is not a

14

"business establishment" subject to the statutes' reach. Nor was Cohen one of GSS's "clients, patrons or customers" to whom it was providing a good or service. (*Alcorn v. Anbro Engineering, Inc.*, *supra*, 2 Cal.3d at p. 500.) Filing suit against GSS for its delivery driver's parking error where, as here, GSS was not a business establishment providing goods or services to Cohen, establishes lack of probable cause to bring suit.

A second fact demonstrating the plain lack of probable cause encompasses the cause of action under the DPA as well as the Unruh Act claim. Schloss alleged GSS denied Cohen access to public accommodations because Cohen could not park in the reserved handicap space blocked by GSS's driver. However, Cohen omits a necessary fact he failed to prove at trial. The handicap parking space was reserved by law for drivers who displayed either a special identification license plate or a valid handicap placard issued pursuant to Vehicle Code sections 22511.55 or 22511.59. (Veh. Code, § 22507.8, subd. (a).) Schloss failed to prove at trial that his client *had an unexpired placard* or license plate *and* that he *had the placard or plate with him to display* so that he could legally park in the blocked space. Indeed, Schloss later told the court that although his client had the handicap placard, he "had lost the document showing when it had been issued"; Schloss himself stated that Cohen had testified to having also lost the "Placard Identification Card/Receipt" for the placard expiring June 30, 2017. Schloss consciously decided before trial "[it was] not worth spending a ½ day to a day of my time tracking down a lost record." It was Schloss's deliberate decision not to locate the proof he needed. Schloss's statements also suggest that if his client had lost the placard prior to trial, the placard was not available to be displayed on the day of the

15

incident.  In any event, without proof at trial that he was entitled to legally park in the blocked space because he had a valid handicap placard on display at the time of the incident, Cohen could not prevail on his claim that he had been illegally denied access to the Bellaj or the 7-11.  Under the evidence presented, Cohen had no tenable cause of action under the DPA.  (Civ. Code, § 54.1, subd. (e) ["This section does not preclude the requirement of the showing of a license plate or disabled placard when required by enforcement units enforcing disabled persons parking violations pursuant to Sections 22507.8 and 22511.8 of the Vehicle Code."].)

Moreover, even if GSS could in some way be held liable for its driver's actions, Cohen's sudden change of story at trial is a reasonable basis to infer that Cohen was not accessing goods or services from anyone, let alone GSS, on the day in question. Under the Unruh Act, Cohen had to show he was prevented from accessing goods and services from some entity.  Once it became clear at trial that Bellaj was not open that day, Cohen changed his story, pivoting to the 7-11 store.  We find a jury might reasonably conclude that Schloss, when he learned Bellaj was not open, should have realized the complaint as pled, was untenable, lacked probable cause, and should not have been prosecuted.

Schloss's contention that he was entitled to rely on the information and photographs supplied by his client does not rescue him.  While "the attorney is entitled to rely on information provided by the client" (*Morrison v. Rudolph*, *supra*, 103 Cal.App.4th at pp. 512–513), once the lawyer discovered the client's statements are false, the lawyer cannot rely on such statements in prosecuting an action.  Schloss actively advocated the changed story and abandoned the facts as pleaded in the

16

complaint. It is probable a jury could find Schloss knowingly prosecuted a false claim.

We note Schloss places great importance on the fact that before the jury returned its verdict for GSS in Cohen's initial action against GSS, the trial court had denied GSS's directed verdict motion. Schloss argues "denial of a directed verdict [motion] defeats a later malicious prosecution action" and the trial judge's decision "is conclusive." We disagree. We make our determination as to whether GSS has a probability of prevailing on its malicious prosecution claim on *our own review* of the record de novo.

Schloss next argues probable cause is established by applying the "interim adverse judgment" rule, in that the trial court's May 2017 interim ruling denying GSS's motion for directed verdict in Cohen's initial action establishes Schloss had probable cause in initiating and/or litigating his client's claims against GSS. Schloss then argues the fact that he had received a favorable ruling in his other, prior case against Carole & Jan's Moving Company[3] based on nearly identical alleged facts "confirm[s] that the interim adverse judgment rule applies."

The interim adverse judgment rule "concerns the probable cause element of a malicious prosecution claim. In contrast to the existence of malice—a question of fact regarding 'the subjective intent or purpose with which [a litigant] acted in' prosecuting the underlying action—the existence of probable cause is a question of law to be determined as an objective matter." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776.) Our state Supreme Court has held that "if an action

---

[3]     See fn. 1, *ante.*

17

succeeds after a hearing *on the merits*, that success ordinarily establishes the existence of probable cause (and thus forecloses a later malicious prosecution suit), even if the result is overturned on appeal or by later ruling of the trial court." (*Id.* at p. 771, italics added; see *Wilson*, *supra*, 28 Cal.4th at p. 817–818.) We are surprised by and reject Schloss's contention that his success in litigating another case against another company (Carole & Jan's Moving Company) for a different incident with different parties is grounds for application of the interim adverse judgment rule in this unrelated case; that case has no bearing on this case.

Similarly, we are not persuaded that a denial of a motion for directed verdict equates to a judgment "on the merits." We reach that conclusion based on our reading of section 630, subdivision (c), which provides: "If the motion [for directed verdict] is *granted*, unless the court in its order directing entry of the verdict specifies otherwise, *it shall operate as an adjudication upon the merits*." (§ 630, subd. (c), italics added.) Nowhere in section 630 or any other authority provided by Schloss does it state that a *denial* of a directed verdict motion amounts to an adjudication on the merits. Further, we are not aware of any authority where a court must apply the interim adverse judgment rule to a denial of a motion for directed verdict. Moreover, it is plain that when the trial court in the underlying action denied the motion for a directed verdict, it did so "at this time," expressly stating counsel could raise the issues again on the merits after trial if necessary, via a motion for judgment notwithstanding the verdict. The trial court wanted the case to go to the jury before it weighed in. Given the trial court's comments, that ruling does not and cannot inoculate the

18

malicious prosecution claim against a finding of lack of probable cause.

We also find it important to note that while Schloss urges us to apply the interim adverse judgment rule to the directed verdict motion, he failed to include a copy of said motion, and any opposition or reply papers as part of the record on appeal. This precludes us from completing our analysis regarding the interim adverse judgment rule, as we have no way of further checking whether "the initial victory in the prior action—i.e., the denial of the [directed verdict motion]—'was induced by materially false facts submitted in opposition' to the motion. [Citation.] That is because, 'if denial of [the motion] was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong. [The directed verdict motion] might have been granted but for the false evidence.' " (*Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 456.)

This, in turn, leads to the third element, malice. Malice "can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.) However, " 'lack of probable cause must be supplemented by other, additional evidence.' " (*Id.* at p. 225.)

Here, the evidence suggests Schloss knowingly continued to pursue the action after being advised by opposing counsel of the defects in his case and after watching his client suddenly and completely change material facts pled in the complaint. Additional evidence supporting a finding of malice is Schloss's failure to prove at trial that his client indeed possessed and displayed a valid handicap placard issued prior to the date of the incident. The handicap placards and the placard identification

19

card receipts submitted to the court by Schloss/Cohen—prior to those submitted as part of the reconsideration motion—indicated Cohen had valid handicap placards from March 17, 2011 until June 30, 2013; from March 19, 2013 until June 30, 2015; and one that expired on June 30, 2017. While the earlier two placards included their respective identification card receipts specifying the date on which each placard was issued, the placard that expired on June 30, 2017 did not contain its respective identification card receipt (or any DMV documentation or certificate), making it impossible for the trier of fact to determine whether the placard Cohen possessed was issued prior to (and thus was effective on) the date of the incident.

Schloss argues "[s]imply not being in possession of the certificate is not enough to show that Cohen's claim was 'totally and completely' without merit." We disagree. To knowingly proceed to trial on a claim requiring proof of entitlement to use the space reserved only for valid placard-displaying vehicles without securing proof that Cohen had a placard in effect at the time of the incident is akin to continuing with an action after one discovers it is baseless. It is an additional fact supporting a finding of malice. The first time the court was provided evidence that Cohen's placard (with the expiration date of June 30, 2017) was issued by the DMV on February 27, 2015, and in effect on the date of the August 19, 2015 incident was via Schloss's October 2018 motion for reconsideration of the denial of his anti-SLAPP motion—nearly a year and a half after trial commenced in Cohen's/Schloss's initial action against GSS.

Based on the foregoing, we conclude GSS has satisfied the second prong of the anti-SLAPP test.

20

2. Violation of Business and Professions Code Section 17200 et seq.

Business and Professions Code section 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." As the California Supreme Court has stated, "[t]he Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.) This code section thus " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143; *Colton, supra,* 206 Cal.App.4th at p. 770.)

Knowingly filing or pursuing unmeritorious legal actions that are not factually or legally tenable, for the purpose of earning income, qualifies as an unfair business practice. We have already found GSS has made a prima facie showing a likelihood of success on its malicious prosecution claim. GSS alleges another example of Cohen and Schloss initiating a "nearly identical" action against a delivery truck parking similarly parking in a reserved handicapped space.[4] GSS argues Schloss's business practice "appears to consist of utilizing Cohen in order to initiate litigation against companies whose delivery persons

---

4       See fn. 1, *ante.*

21

park in handicapped spots." GSS refers to Schloss's behavior as part of a " 'legal shakedown scheme' " based on an abuse of the Unruh Act, similar to abuse of the unfair competition law. We are persuaded these facts and this legal theory have merit, especially given our findings and decision in the preceding section as to the malicious prosecution cause of action.

Based on the foregoing, we find GSS has met its burden of showing a probability of prevailing on the merits of its cause of action for unfair business practices.

E. *Motion for Reconsideration*

In his notice of appeal filed February 22, 2019, Schloss indicated he was appealing from: 1) the court's October 16, 2018 order denying his special motion to strike GSS's complaint, and 2) the court's January 23, 2019 order denying his motion for reconsideration.

On appeal, Schloss raises no argument about the trial court's denial of the motion for reconsideration nor does he identify a challenge to the trial court's ruling in a "separate argument heading" in his brief. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) We thus treat his contention as waived. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 729, fn. 1.; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)

## DISPOSITION

The trial court's denial of the anti-SLAPP motion is affirmed.  The trial court's denial of the motion for reconsideration is affirmed.  Respondent Golden State Seafood, Inc., is awarded costs on appeal.


STRATTON, J.

We concur:


BIGELOW, P. J.


WILEY, J.

23

Filed 8/6/20

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GOLDEN STATE SEAFOOD, INC., | B295937 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC707628) |
| v. | |
| JAMIE R. SCHLOSS, | ORDER CERTIFYING OPINION FOR PUBLIATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on July 22, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

BIGELOW, P. J.                STRATTON, J.                WILEY, J.